Roy RIVERA, Appellant,

v.

**HERNDON MARINE PRODUCTS, INC. and the M/V "Gulf King 42", Appellees.**

No. 13–92–676–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 2, 1995.

Rehearing Overruled March 2, 1995.

Warren L. Eddington, Michael Maldonado, Law Office of Warren L. Eddington, P.C., Corpus Christi, Elizabeth A. Davis, Law Offices of Warren Eddington, Houston, for appellant.

Daniel D. Pipitone, G. Don Schauer, Kimberley Hall Seger, Pipitone, Schauer & Simank, Corpus Christi, for appellees.

Before SEERDEN, C.J., and DORSEY and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

This is an appeal from a take-nothing judgment in a jury trial. In the action below,

Roy Rivera sued Herndon Marine Products, Inc. for injuries Rivera sustained while working as captain of the Gulf King 42, one of Herndon Marine's shrimp boats. Rivera pleaded causes of action involving negligence under the Jones Act and unseaworthiness under general maritime law. The trial court refused to submit Rivera's seaworthiness claim, and the jury returned findings against Rivera on the issue of negligence. Based on this verdict, the trial court entered the take-nothing judgment. Rivera's appeal raises four points of error. We reverse and remand.

In his first point, Rivera complains that the trial court erred by failing to submit a jury question on seaworthiness. In the alternative, Rivera's second point of error argues that the court should have granted his motion for a directed verdict on the issue of seaworthiness. In his third point of error, Rivera challenges the sufficiency of the evidence underlying the jury's finding that absolved Herndon Marine of negligence. Rivera's final point contends that the trial court erred by admitting certain evidence.

### SEAWORTHINESS

In his first two points of error, Rivera complains that the trial court erred in its approach to the issue of seaworthiness. Rivera's first point argues that the court should have submitted a jury question on seaworthiness because the issue was pleaded and supported by evidence adduced at trial. Rivera's second point raises the alternative argument that the trial court should have found the Gulf King 42 unseaworthy as a matter of law. Because the remedy for the error Rivera complains of in his second point is rendition rather than remand, we address Rivera's second point first. *See Lone Star Gas Co. v. Railroad Comm'n of Tex.*, 767 S.W.2d 709, 710 (Tex.1989).

### Motion for Directed Verdict

■ Under a point of error questioning the denial of a motion for directed verdict, the appellant must show that the record contains evidence establishing the movant's position as a matter of law. *Kershner v. State Bar of Tex.*, 879 S.W.2d 343, 346 (Tex.App.—

Houston [14th Dist.] 1994, writ denied). Consequently, we affirm the trial court's ruling if the record contains more than a scintilla of evidence supporting the position contrary to the movant's position. *Id.; see also* TEX.R.CIV.P. 301.

■ Rivera contends that he conclusively proved the unseaworthy condition of the Gulf King 42. The record establishes that the shrimp boat was out in stormy mid-December weather when the accident that led to this suit occurred. According to unanimous testimony, the nets were lowered onto the deck to be untangled and cast. These nets were either kept on the deck or secured by hooks above the deck.

Further uncontradicted evidence shows that one of the hook-ended ropes used to bind the boat's nets swung across the deck and hit Rivera in the head. These hooks were ordinarily secured to a ring specifically provided to hold the hook and to prevent the hook from swinging.

After this point, however, the evidence is conflicting. The record contains two contradictory accounts of how the hook came unfastened from its ring.

In a written statement recorded a few months after the accident, Rivera explained that the hook was fastened to the netting but came loose in the storm. The rigman, Juan Solis, provided a different story. He admitted that he had forgotten to attach the hook to the ring and that this lapse was "just a foolish mistake." Solis confessed that he did not secure the hook because he was in a hurry to separate the nets and begin fishing.

Solis's testimony is some evidence that the injury to Rivera was caused by an individual act of negligence rather than by the unseaworthy condition of the Gulf King 42. Accordingly, we cannot sustain Rivera's second point of error.

### Submission of Issues

In the alternative to his second point of error, Rivera contends that the testimony discussed above is at least sufficient to warrant a jury question on the issue of seaworthiness. In response, Herndon Marine ar-

gues that Rivera's failure to tender a requested question in substantially correct form waived any error in the trial court's decision not to submit this issue. We do not reach any assessment of whether the evidence supports submission of the issue until we determine that the alleged error was preserved.

■ The failure to submit a question is grounds for reversal only if submission has been requested in writing and tendered in substantially correct wording. Tex.R.Civ.P. 278. A question tendered in substantially correct wording must be correct "in substance and in the main" and "not affirmatively incorrect." *Placencio v. Allied Indus. Int'l, Inc.*, 724 S.W.2d 20, 21 (Tex.1987).

■ Rivera requested the following question:

### Question No. 3

Do you find that the unseaworthiness, if any, *which you may have found in response to Question No. 3,* was a proximate cause of Roy Rivera's injuries?

(emphasis added). Rivera also provided accompanying instructions on unseaworthiness and causation.

Herndon Marine complains that Rivera's tender fails to include a question on the issue of seaworthiness separate from the issue of causation. According to Herndon Marine, the combination of these two questions assumes the truth of a contested material fact—the unseaworthiness of the vessel—and comments on the weight of the evidence. We disagree.

Issues of causation may be submitted along with other issues under a theory of recovery. In fact, the trial court should submit a cause of action by broad-form questions whenever feasible. Tex.R.Civ.P. 277; *Texas Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). The requested question combined the issues of seaworthiness and causation. Although the question could have been worded more clearly, there was no error in the presentation of the relevant legal issues. In the context of the accompanying instructions, the tendered question was not worded in a manner that would have allowed the jury to make a finding that did not comport with the governing law. As a result, Rivera's request was not incorrect in substance or in the main.

Additionally, the emphasized portion of the tendered question would not create such confusion or ambiguity as to render the question affirmatively incorrect. The misnumbering of a question is not a substantive or affirmative error. Consequently, Rivera has not waived review on the merits of his first point of error. We must therefore consider whether the trial court erred by refusing to submit Rivera's seaworthiness issue.

■ The trial court may refuse a properly tendered jury question only if the issue was not pleaded or if no evidence was presented to justify submission of the issue. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). Rivera pleaded unseaworthiness as a cause of action and contends that he adduced sufficient evidence of unseaworthiness to warrant the submission of a jury question.

■ As discussed above, the record contains Rivera's written statement. In this statement, Rivera suggests that the hook was fastened to the netting and came loose only as a result of the rough seas. This evidence indicates that the rings designed to secure the hooks might have been inadequate to perform their intended function during a storm.

In addition to this testimony, the record contains the testimony of the rigman. As we have already mentioned, Solis confessed to having inadvertently failed to attach the hook to the ring. Moreover, Solis himself characterized this error as "a foolish mistake."

Significantly, Solis further testified that each of the other crewmen similarly neglected to secure the hooks in their rings as they hurriedly unfurled the shrimp nets. This testimony raises the possibility that the crew might have been inadequate to man the boat in a storm or poorly trained in safe methods of performing their job.

■ Rivera brought his case under the Jones Act and under theories of recovery recognized in general maritime law. The Jones Act grants seamen rights against their

employers for injuries caused by the employer's negligence. *See* 46 App.U.S.C. § 688. Maritime law also provides a cause of action for injuries resulting from defects or insufficiencies of a vessel, its crew, or its appurtenances that undermine the vessel's seaworthiness. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549, 80 S.Ct. 926, 932–33, 4 L.Ed.2d 941 (1960). This warranty of seaworthiness involves the owner's absolute duty to furnish a vessel, crew, and appurtenances reasonably fit for their intended use. *Id.*

Rivera argues that the rigman's failure to secure the hook created an unsafe condition that rendered the Gulf King 42 unseaworthy and resulted in Rivera's injury. *See, e.g., Waldron v. Moore–McCormack Lines, Inc.,* 386 U.S. 724, 727–28, 87 S.Ct. 1410, 1412–13, 18 L.Ed.2d 482 (1967) (an incompetent or insufficient crew may render a vessel unseaworthy); *Crumady v. The Joachim Hendrik Fisser,* 358 U.S. 423, 427–28, 79 S.Ct. 445, 447–48, 3 L.Ed.2d 413 (1959) (a vessel may be rendered unseaworthy by an improper adjustment to or misuse of an otherwise sound appurtenance); *Skibinski v. Waterman S.S. Corp.,* 360 F.2d 539, 541–42 (2nd Cir.1966), *cert. denied,* 387 U.S. 921, 87 S.Ct. 2027, 18 L.Ed.2d 975 (1967) (a fellow crewmen's misuse of equipment may render the vessel unseaworthy); *Olsen v. Isbrandtsen Co.,* 209 F.Supp. 6, 9 (S.D.N.Y.1962) (a crewman's own misuse of equipment may diminish the amount of his recovery but does not affect the determination of seaworthiness in any action that he may bring). Conversely, Herndon Marine contends that Rivera relies on cases that collapse the distinction between negligence and seaworthiness, an approach the Supreme Court disapproved in *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). *See Robinson v. Showa Kaiun K.K.,* 451 F.2d 688, 690 (5th Cir.1971) (an isolated negligent act will not give rise to the condition of unseaworthiness).

*Usner,* which was decided after the cases cited by Rivera, held that negligence and seaworthiness are separate theories of recovery that must be kept distinct. *Usner,* 400 U.S. at 498–99, 91 S.Ct. at 517–18. The central issue in *Usner* was "the very definition of what unseaworthiness is and what it is not." *Id.* at 498, 91 S.Ct. at 517. The *Usner* court declared:

A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service.

*Id.* at 499, 91 S.Ct. at 517–18 (citations omitted). In *Usner,* a longshoreman was injured while loading cargo aboard a vessel. The loading apparatus involved a winch-powered sling that was used to hoist the cargo into the ship's hold. Usner was injured when the winch operator lowered the sling too fast. Usner alleged only that the vessel was unseaworthy, and the facts underlying this theory of recovery were undisputed. Affirming summary judgment for the vessel owner, the Supreme Court observed:

What caused the petitioner's injuries in the present case, however, was not the condition of the ship, her appurtenances, her cargo, or her crew, but the isolated, personal negligent act of the petitioner's fellow longshoreman. To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions.

*Id.* at 500, 91 S.Ct. at 518 (footnotes omitted) (the court included a footnote to specifically mention that no member of the ship's crew was in any way involved in the accident).

The present case is distinguishable from *Usner.* Here, the evidence showed that the Gulf King 42 was equipped with nets suspended by hooks that would swing across the deck if they became unsecured. There was some evidence that the rings used to secure these hooks were inadequate to serve this intended function during a storm. Additionally, the record contains contrary evidence suggesting that the boat's crewmen used the

net storage equipment in a manner that created a danger, which resulted in Rivera's injury. There is further evidence that this practice was not an isolated act of negligence but the crew's routine method of untangling the nets. *Cf. Robinson,* 451 F.2d at 690 (although one isolated act of negligence will not give rise to the condition of unseaworthiness, an aggregation of negligent acts or the adoption of a negligent practice over a period of time may affect the seaworthiness of a vessel).

Whether inadequacies in the hook rings or the improper training of the crew rendered the Gulf King 42 unseaworthy was an issue that should have been resolved by the jury. Consequently, the trial court erred by refusing to submit the requested issue. We sustain Rivera's first point of error and remand the issue of seaworthiness for trial.

### FURTHER REMAND TO AVOID THE UNFAIR SEPARATION OF ISSUES

As is apparent from the foregoing discussion of the evidence, the jury was presented with two irreconcilable accounts to explain how the hook came free from its ring. If the jury believed the rigman's testimony, Rivera would have established the greater part of his claim for negligence under the Jones Act. On the other hand, the jury may have believed that the mid-December storm loosened the hook from its ring as explained in Rivera's written statement. If the jury was convinced by this written statement, Rivera would have succeeded in proving the majority of his claim asserting the Gulf King 42's unseaworthiness.

The trial court should have allowed Rivera to try the two competing theories of recovery in the same action. To some extent, the jury's rejection of evidence in favor of one of the two claims implies the jury's tacit acceptance of evidence supporting the alternative claim. Accordingly, we would unfairly abridge Rivera's right to recovery by affirming the judgment in favor of Herndon Marine on the issue of negligence and remanding only on the issue of seaworthiness. *See* TEX. R.APP.P. 81(b)(1) (partial reversal is appropriate only when issues affected by the trial

court's error are "clearly separable" from the other issues and separation does not result in "unfairness to the parties").

Likewise, Herndon Marine should not be permitted to emphasize Rivera's written statement in a negligence trial but then emphasize the rigman's testimony in a subsequent trial of the seaworthiness issue. *See Id.; Otis Elevator Co. v. Bedre,* 776 S.W.2d 152, 153 (Tex.1989) (discussing boundaries of appellate court's authority to limit the scope of its remand); *Morrow v. Shotwell,* 477 S.W.2d 538, 541–42 (Tex.1972) (discussing the historical basis and scope of remand in the interest of justice). As a result, we do not reach Rivera's two remaining points of error. Instead, we reverse the trial court's judgment and remand for a new trial on all issues.