**RENTE COMPANY and Mike Kiszkiel, Appellants,**

v.

**TRUCKERS EXPRESS, INC., Appellee.**

No. 14–02–00006–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 28, 2003.

Tracy C. Temple, Karen Ann Lister, Houston, for appellants.

Barham Lewis, Houston, for appellee.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This case arises out of a business dispute between appellee Truckers Express, Inc. and appellant Rente Company and its owner, appellant Mike Kiszkiel. The trial court granted Truckers's motion for directed verdict as to its promissory-note claim against Rente and Kiszkiel, refused to submit jury questions as to Rente's conversion and fraud claims against Truckers, and submitted jury questions as to whether Rente or Truckers breached the equipment lease agreement between them. We hold that the trial court erred in granting a directed verdict as to the note claim and in refusing to submit a jury question as to the conversion claim, but that it did not err by refusing to submit the fraud question. We conclude the evidence is sufficient to support the jury's finding that Truckers did not breach the lease agreement, but that the evidence is insufficient to support the damage finding regarding Rente's breach. Therefore, we reverse the trial court's judgment on Rente's claim for conversion of the equipment and Truckers's breach-of-contract claim, sever these claims, and remand them for a new trial. We affirm the remainder of the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After negotiating the terms of a business relationship, Rente and Truckers signed a letter agreement dated February 16, 1998, and then an Independent Contractor Equipment Lease Agreement dated February 19, 1998 (collectively referred to hereinafter as the "Lease Agreement").[1] Pursuant to the Lease Agreement, Rente had an exclusive arrangement under which it leased more than thirty truck tractors and more than thirty truck trailers to Truckers. As part of its obligations under this contract, Truckers handled administrative details for Rente, such as insurance, payroll, cash advances, and dispatch. Truckers was obligated to pay Rente a percentage based on a calculation of the revenue generated by the leased equipment. Rente was responsible for paying lenders for amounts owed on the equipment and for paying all costs of operation of the equipment, including costs for fuel, tires, tire repairs, maintenance, accessories needed to operate the equipment, taxes, assessments, fines, and tolls.

Truckers set up two accounts for Rente: (1) a general-ledger account and (2) a contractor-settlement account. Truckers posted on the general-ledger account costs and credits that were unrelated to freight, such as commissions. Truckers documented freight-related items, such as freight revenues and fuel costs, in the contractor-settlement account.

Shortly after the execution of the Lease Agreement, Truckers loaned Rente and Kiszkiel $30,000 to help them pay off creditors and avoid possible repossession of some of the leased equipment. The parties documented this loan with a promissory note (hereinafter "Note"). Truckers later loaned more money to Rente and also advanced payments to Rente's creditors.

In March of 1998, Rente and Truckers discussed the possibility of Rente setting up a lease-purchase program with its truck drivers. Under this proposed program, (1) Rente would lease individual trucks to drivers with an option for the

1. Although Rente and Kiszkiel seem to indicate in their appellate brief that a prior letter agreement, dated February 13, 1998, might have survived the execution of the Lease Agreement, we need not and do not address that issue.

drivers to purchase the trucks and with the understanding that the drivers would sublease the trucks to Truckers; (2) the drivers would be responsible for maintaining and repairing the leased equipment and paying taxes; and (3) Rente would receive lease payments from the drivers and a three percent commission. There is conflicting testimony regarding the lease-purchase program. Although Rente admits that it agreed to execute a lease-purchase agreement with one of its drivers, Rente claims that without its knowledge or consent, Truckers duplicated the signature page of this one lease-purchase agreement and attached a copy of it to other such documents, resulting in "lease-purchase agreements" with numerous other Rente drivers. Truckers asserts that Rente entered into these lease-purchase agreements with its drivers and that these agreements changed the status of the drivers from Rente employees to independent contractors, who were leasing the equipment from Rente with an option to purchase.

Dissatisfied with its relationship with Truckers and the amount of money it was receiving from the parties' business arrangement, Rente terminated the Lease Agreement on April 30, 1998, effective immediately. At that time, Rente demanded that Truckers return all of Rente's equipment. Based on Kiszkiel's testimony, Rente recovered, at most, ten truck tractors and ten truck trailers from Truckers. Truckers asserts that it was not responsible for returning any of the equipment because there is no provision for the return of the equipment in the Lease Agreement.

Rente complains that after termination of the Lease Agreement, Truckers continued to use Rente's equipment without compensating Rente. Truckers asserts that any equipment that it used had been leased by Rente to the respective drivers, who then subleased the equipment to Truckers.

Truckers sued Rente and Kiszkiel asserting breach-of-contract claims on both the Note and the Lease Agreement. Rente filed a counterclaim, asserting, among other things, claims for breach of the Lease Agreement, fraud, and conversion. In the first trial in this case, the jury found in Rente's favor on its claims for fraud and breach of contract, and in Truckers's favor on the Note claim. The trial court granted a new trial on its own motion.

In the second trial, the trial court directed a verdict finding Rente and Kiszkiel liable on the Note claim, and the trial court refused to charge the jury on Rente's conversion and fraud claims. The jury found damages of $44,676.71 for Truckers's Note claim. Additionally, the jury found that both Rente and Kiszkiel entered into the Lease Agreement with Truckers, that Rente and Kiszkiel breached the Lease Agreement, causing $25,000 in damages, and that Truckers did not breach the Lease Agreement. The trial court signed a judgment in favor of Truckers and against Rente and Kiszkiel for $67,676.71, plus interest.

## II. Issues Presented

On appeal, Rente and Kiszkiel assert six issues:

1. Did the trial court err in granting a directed verdict as to liability on the Note claim?

2. Did the trial court err in refusing to submit a jury question on conversion?

3. Did the trial court err in refusing to submit a jury question on fraud?

4. Is there no evidence, or alternatively, factually insufficient evidence, to

support the jury's damages finding on the Note claim?

5. Is there no evidence, or alternatively, factually insufficient evidence, to support the jury's damages finding on Truckers's claim for breach of the Lease Agreement?

6. Did Rente conclusively establish that Truckers breached the Lease Agreement? Alternatively, is the jury's finding that Truckers complied with the Lease Agreement against the great weight and preponderance of the evidence?

## III. STANDARDS OF REVIEW

In reviewing the first three issues, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *See Latham v. Castillo,* 972 S.W.2d 66, 68 (Tex.1998); *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994). We consider all of the evidence in the light most favorable to Rente and Kiszkiel and disregard all contrary evidence and inferences; we give Rente and Kiszkiel the benefit of all reasonable inferences created by the evidence. *See Szczepanik,* 883 S.W.2d at 649. If there is any conflicting evidence of probative value, then we must reverse and remand for a jury determination of that issue. *Id.*

In reviewing the legal sufficiency in the fifth issue, we view the evidence in a light that tends to support the disputed findings and disregard all evidence and inferences to the contrary. *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex. 2001). If more than a scintilla of evidence exists, it is legally sufficient. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

In reviewing the legal sufficiency in the sixth issue, we must determine if Rente and Kiszkiel have demonstrated that the evidence establishes, as a matter of law, all vital facts in support of their breach-of-contract claim under the Lease Agreement. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). In reviewing this "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *See id.* If there is no evidence to support the finding, we then must examine the entire record to determine if the contrary proposition is established as a matter of law. *See id.* The issue should be sustained only if the contrary proposition is conclusively established. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

In reviewing the factual sufficiency of the evidence under the fifth and sixth issues, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside a fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet,* 61 S.W.3d 599, 615–16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet,* 61 S.W.3d at 616.

## IV. ANALYSIS AND DISCUSSION

### A. Did the trial court err in granting a directed verdict as to liability on the Note claim?

█ In their first issue, Rente and Kiszkiel challenge the trial court's directed verdict that they are liable on the Note. In response, Truckers asserts Rente and Kiszkiel have waived this argument because (1) they are arguing that they paid the Note but payment is an affirmative defense that they did not plead; and (2) they did not request a jury instruction regarding the payment issue. Rente and Kiszkiel assert that there was a fact issue on the material question of what amount, if any, was due and owing under the Note, making a directed verdict improper. *See Szczepanik*, 883 S.W.2d at 649. Rente and Kiszkiel base this argument on testimony by Tara Scott, Truckers's accountant, that Truckers posted the debt from the Note as a debit in Rente's general-ledger account and then offset the entire amount against commissions, rentals, and other amounts Truckers owed Rente. We find that, under these facts, Rente and Kiszkiel did not have to plead payment. *See Derbigny v. Bank One*, 809 S.W.2d 292, 294 (Tex.App.-Houston [14th Dist.] 1991, no writ) (stating general denial puts in issue amount due and owing under Note). Further, Rente and Kiszkiel did not need to request a jury instruction to complain of the trial court's granting of a directed verdict. *See Field v. AIM Management Group, Inc.*, 845 S.W.2d 469, 473 (Tex.App.-Houston [14th Dist.] 1993, no writ). Accordingly, we find no waiver.

█ Regarding the merits of the first issue, we hold that the trial court erred in granting a directed verdict as to liability on the Note claim. During Truckers's case-in-chief, Kiszkiel testified that he had "not paid [the Note] back." However, later in Truckers's case-in-chief, Truckers's accountant (Scott) testified that Truckers posted the debt from the Note as a debit in the general-ledger account for Rente. Truckers's exhibit number 68, which was admitted in evidence, documents this general-ledger account and indicates that Truckers posted the amount of the Note as a debit in the general-ledger account, offsetting this amount against credits that Truckers owed Rente. After reviewing this evidence under the appropriate standard of review, we conclude that there was evidence of probative force to raise a fact issue regarding the amount due and owing under the Note and that the trial court erred by granting a directed verdict in Truckers's favor on this claim. *See Szczepanik*, 883 S.W.2d at 649. Accordingly, we sustain the first issue, reverse that part of the trial court's judgment, and remand for a jury determination of all of Truckers's Note claim.[2]

### B. Did the trial court err in refusing to submit the conversion claim to the jury?

█ In the second issue, Rente asserts the trial court erred in refusing its proposed liability and damages questions on Rente's conversion claim. Rente asserts that there was probative evidence that raised a fact issue regarding its conversion claim and that the trial court should have submitted the issue to the jury. Truckers argues there was no evidence of the essential elements of title and right to possession and, as a matter of law, Rente cannot maintain an action for conversion of money.

**2.** Because of our disposition of the first issue, we need not address the fourth issue regarding the jury's damages finding on the Note claim.

■ Conversion is the unauthorized exercise of dominion and control over property inconsistent with or to the exclusion of another's superior rights in that property. *Vickery v. Texas Carpet Co., Inc.*, 792 S.W.2d 759, 763 (Tex.App.-Houston [14th Dist.] 1990, writ denied). Rente asserts conversion of both its equipment and profits allegedly earned on the use of its equipment. After reviewing the evidence under the applicable standard of review and considering the arguments of the parties, we conclude that Rente may not assert a conversion claim as to profits or other payments allegedly owed to Rente; however, we also hold that the trial court erred in not submitting a jury question on Rente's conversion claim regarding the equipment.

### Profits and Other Amounts Allegedly Owed Under the Lease Agreement

■ Rente asserts that Truckers converted Rente's profits from the use of its equipment by not paying Rente the amounts Truckers owed under the Lease Agreement. Even if this claim were otherwise viable, we hold as a matter of law that these sums of money are not identifiable, specific chattels capable of being converted; rather, they are alleged indebtedness that may be discharged by the payment of money generally. *See Newsome v. Charter Bank Colonial,* 940 S.W.2d 157, 161–64 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Therefore, Rente's claim for conversion as to amounts of money allegedly owed by Truckers fails as a matter of law. *See id.* Accordingly, we overrule the second issue as to any claim for conversion of profits or other payments.[3]

### Equipment

■ Truckers claims that Rente did not offer any evidence showing it had title or a right to possess the equipment Truckers allegedly converted. We disagree. The Independent Contractor Equipment Lease Agreement, signed by Truckers and Rente, recites that Rente owns or controls certain equipment leased to Truckers, and identifies this equipment in an attached Exhibit A, which contains detailed descriptions of the tractors, trailers and other equipment, including serial numbers. Also in evidence are sales contracts reflecting the purchase by Rente of some of the equipment before the execution of the Lease Agreement as well as 26 documents entitled "Equipment Lease Agreement with Purchase Option" (hereinafter, "Driver's Contracts"). Most of these Driver's Contracts contain purported signatures of both Rente, as lessor, and of each respective driver, as lessee. Two of these documents—those signed by Wilson Bonner and Jose Vasquez—contain no signature of Rente at all. Two others—those signed by Peter Williams and John Goebel—have no signature of Rente in the signature block but contain an alleged signature of Rente on the attached Exhibit A. These documents all state that Rente owns the equipment described therein. Although Truckers relies on the Driver's Contracts to argue that it did not engage in the unauthorized exercise of dominion and control over property inconsistent with or to the exclusion of Rente's rights, these documents are nonetheless additional evidence of Rente's title and rights to possession and control of the equipment. Based on the evidence in the record and the applica-

---

**3.** Evidence regarding these or similar payments may be relevant to the jury determination of the damages, if any, caused by Truckers's alleged conversion of Rente's equipment; our ruling does not prevent the trial court on remand from admitting evidence in this regard, providing such evidence is otherwise admissible.

ble standard of review, we hold that there was probative evidence at trial that raised a fact issue regarding Rente's title to or right to possess the equipment allegedly converted by Truckers. *See Szczepanik*, 883 S.W.2d at 649; *Schwartz v. Pinnacle Communications*, 944 S.W.2d 427, 433 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (holding that canceled check and invoice were sufficient to prove ownership of equipment that was allegedly converted).

■ Truckers also argues that Rente judicially admitted in a sentence in its counterclaim that Rente's lenders had repossessed all of the equipment owned by Rente and referred to in the Lease Agreement. We find no merit in Truckers's argument. The sentence in question states that "with the exception of certain trucks and trailers that [Rente] outright owned, the remaining trucks and trailers, which [Rente] was able to locate, have been repossessed by various lenders." This sentence is not a deliberate, clear, and unequivocal statement that Rente's lenders have repossessed all of the equipment subject to the Lease Agreement and so is not a judicial admission. *See Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 349 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Accordingly, this statement has no conclusive effect.

■ Having found a fact issue regarding Rente's title to or right to possess the equipment in question, we must decide whether there was any evidence that Truckers exercised dominion and control over this equipment without Rente's consent and in a manner inconsistent with or to the exclusion of Rente's superior rights. *See Vickery*, 792 S.W.2d at 763. In this regard, there is no dispute that Rente terminated the Lease Agreement effective April 30, 1998, and demanded return of all

of its equipment. Kiszkiel testified that Truckers did not comply with this demand. Truckers argues that it had no contractual duty to return the equipment and that any drivers under contract with Truckers who used Rente's equipment after April 30, 1998, were entitled to do so, because Rente had leased the equipment to these drivers under the Driver's Contracts.

Even if Truckers had no contractual duty to return the equipment, Truckers still had no right to exercise dominion and control over this equipment without Rente's consent and in a manner inconsistent with or to the exclusion of Rente's superior rights. *See Vickery*, 792 S.W.2d at 763. Further, Robert Froehlich, President of Truckers, testified that Truckers probably did use Rente's equipment after April 30, 1998, but he claimed that this was acceptable because of the Driver's Contracts. Froehlich testified that Truckers's invoices indicated which drivers were driving Rente's trucks—the ones who had a driver number that started with "770." The evidence introduced at trial included numerous Truckers's invoices billing customers for the transportation of goods after April 30, 1998, where the driver had a number that started with "770." Truckers asserts that Rente authorized these actions by executing the Driver's Contracts. Rente, on the other hand, contends that it executed only one of the 26 Driver's Contracts introduced in evidence at trial. This factual dispute over the validity of certain signatures notwithstanding, the evidence showed that Truckers sent out at least seven invoices billing for services performed after April 30, 1998, by three drivers[4] whose number starts with "770" and whose Driver's Contract was not signed by Rente. Furthermore, we find no evidence in the record that Rente entered into Driv-

---

4. These drivers are Peter Williams, John Goebel, and Wilson Bonner.

er's Contracts with these three drivers.[5] We hold there was probative evidence raising a fact issue as to whether Truckers exercised dominion and control over Rente's equipment without Rente's consent and in a manner inconsistent with or to the exclusion of Rente's superior rights.[6] *See Vickery,* 792 S.W.2d at 763.

Because there was a fact issue regarding Rente's conversion claim as to the equipment, we sustain the second issue to this extent, reverse that part of the trial court's judgment, and remand for a jury determination of Rente's conversion claim regarding the equipment.

### C. Did the trial court err in refusing to submit the fraud claim to the jury?

In the third issue, Rente and Kiszkiel argue the trial court erred in refusing the proposed jury question on their fraud claim. They assert there was probative evidence that raised a fact issue as to whether Truckers committed fraud when Truckers's president (Froehlich) allegedly made material misrepresentations to Kiszkiel that the lease-purchase program would be limited, convinced Kiszkiel to sign one of the Driver's Contracts, and then attached a copy of this one signature page to other such documents without the knowledge or consent of Rente or Kiszkiel.

First, the counterclaim filed by Rente and Kiszkiel contains no allegations in support of this theory of fraud, although it does allege fraud and misrepresentation in other particulars not relevant to this appeal. The counterclaim actually tends to contradict part of the appellate argument of Rente and Kiszkiel. Their counterclaim states that "Rente . . . agreed to enter into a very limited number of such agreements [Driver's Contracts]." This pleading suggests that Rente agreed to more than one agreement. Further, in a letter to Truckers dated April 16, 1998, Kiszkiel states, "I am also still waiting on the contracts and equipment inventory lists from the sale of my equipment to the owner/operators."

■ Though Kiszkiel testified that he agreed to one of the Driver's Contracts, he did not specify the driver, and he did not say that he agreed to such a contract with *only* one driver. Kiszkiel did not state whether Rente agreed to any of the 26 Driver's Contracts that were admitted in evidence. Further, applying the appropriate standard of review, we conclude there was no evidence at trial that Truckers represented to Rente or Kiszkiel that the lease-purchase program would be limited or that it would include only one driver. Therefore, because there was no evidence of the alleged misrepresentation, the trial court did not err in refusing to submit the fraud question. *See Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997) (holding that fraud claim failed where there was no evidence of a false representation); *Roland v. McCullough,* 561 S.W.2d 207, 210–13 (Tex.App.-San Antonio 1978, writ ref'd n.r.e.) (holding that fraud claim failed where there was no evidence

---

**5.** Froehlich himself testified that, in order for there to be a contract executed by the parties, he believed Rente had to sign the signature block on page 12 of the form used for the Driver's Contracts.

**6.** Truckers asserts that there was no fact issue regarding conversion, in part, because Kiszkiel's testimony is legally insufficient based on his alleged repeated lies under oath. Presum-

ing for the sake of argument that Kiszkiel's testimony was untruthful, it is for the jury—not an appellate court—to weigh the credibility of his testimony, and therefore we can consider Kiszkiel's testimony in reviewing whether there was a fact issue as to conversion. *See Magee v. Ulery,* 993 S.W.2d 332, 336 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

that alleged misrepresentation was made). Accordingly, we overrule the third issue.

### D. Is the evidence sufficient to support the jury's damages finding regarding Truckers's claim for breach of the Lease Agreement?

In the fifth issue, Rente and Kiszkiel assert there is no evidence to support the jury's finding that the breach of the Lease Agreement by Rente and Kiszkiel resulted in $25,000 in damages to Truckers. Truckers's own accounting, based on both the contractor-settlement account and the general-ledger account, showed that there was a net amount of $40,666.77 owed. This calculation includes a debit of $30,000 to reflect the amount of the Note. In his closing argument, counsel for Truckers asked the jury to award only $10,666 in damages that Truckers claimed resulted from breach of the Lease Agreement. Truckers's counsel indicated that awarding more than this amount would be "double-dipping." Despite the evidence and statements of counsel, the jury awarded $25,000 as damages for breach of the Lease Agreement. On appeal, Truckers does not defend the sufficiency of the evidence to support this award; instead, it requests that we suggest a remittitur rather than reversing and remanding for a new trial.

■ Applying the applicable standard of review, we find the evidence is legally insufficient to support the jury's award of $25,000; however, there is sufficient evidence to show that Truckers suffered some damage as a result of the actions alleged to constitute breach of the Lease Agreement. Because Rente and Kiszkiel contested the issue of damages, we sustain the fifth issue, reverse the trial court's judgment regarding Truckers's claim for breach of the Lease Agreement, and remand for a new trial on liability and damages regarding this claim. *See* TEX.R.APP.

P. 44.1(b) (appellate court may not order separate trial solely on unliquidated damages if liability is contested); *Formosa Plastics Corp. USA v. Presidio Engineers and Contrs., Inc.*, 960 S.W.2d 41, 51 (Tex. 1998) (holding that appellate court can remand for new trial when no evidence supports damages awarded but there is evidence of some damages); *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 284 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (stating appellate courts cannot remand as to damages only).

■ We decline Truckers's invitation to suggest a remittitur. We conclude that a remittitur is not appropriate, because we are remanding Truckers's Note claim for a retrial and because the issue of damages in Truckers's claim for breach of the Lease Agreement relates to Truckers's Note claim. In the context of this case, we hold that the interests of justice require a remand for another trial regarding Truckers's claims on the Note and the Lease Agreement. *See* TEX.R.APP. P. 43.3(b) (appellate court may remand for another trial when interests of justice require it); *Johnston*, 9 S.W.3d at 284 (stating appellate courts have broad discretion to remand in the interest of justice).

### E. Is the evidence sufficient to support the jury's finding that Truckers did not breach the Lease Agreement?

■ In the sixth issue, Rente asserts it conclusively proved that Truckers breached the Lease Agreement by failing to use Rente's equipment, failing to find enough drivers for the tractors and trailers, and failing to pay Rente money owed under the Lease Agreement. We disagree.

As to the alleged failures to use Rente's equipment and find enough drivers, the Lease Agreement does not contain any provision requiring either a minimum level of equipment use or a minimum level of

revenue to be generated by lease of the equipment. The Lease Agreement states that "the assignment of loads to the equipment shall be solely within the discretion of [Truckers]." The Lease Agreement allows either party to terminate the contract without cause with thirty days' notice. In fact, Truckers allowed Rente to terminate the contract on April 30, 1998, with no notice. Further, Kiszkiel indicated in a letter to Truckers that Truckers had hired a sufficient number of drivers, although he complained that these drivers were refusing to haul certain loads for Rente's customers.

As to Truckers's alleged failure to properly pay Rente money allegedly owed under the Lease Agreement, Rente cites only portions of the testimony of one driver, David Atwood, and exhibits relating to that driver. Though Rente claims that it was not paid for all of the services performed by Atwood, there is conflicting evidence on this point both from Atwood's testimony and from the testimony of Truckers's accountant (Scott), regarding the amounts owed to Rente. Applying the applicable standard of review, we hold that Rente did not conclusively prove that Truckers breached the Lease Agreement and that factually sufficient evidence supports the jury's finding that Truckers did not breach the Lease Agreement. *See Coastal Chem., Inc. v. Brown*, 35 S.W.3d 90, 102–03 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding evidence legally and factually sufficient to support jury's finding regarding breach-of-contract claim). Accordingly, we overrule the sixth issue.

We conclude that Rente's breach-of-contract claim against Truckers may be separated from its conversion claim and from Truckers's contract claims, without unfairness to the parties. Therefore, we sever the trial court's judgment as to Rente's claim against Truckers for conversion of the equipment and as to Truckers's claims for breach of the Note and the Lease Agreement; we remand these claims for a new trial and affirm the remainder of the trial court's judgment. *See* Tex.R.App. P. 43.3(b) (appellate court may remand for another trial when interests of justice require it); Tex.R.App. P. 44.1(b) (stating that, if error affects part of the matter in controversy and that part is separable without unfairness to the parties, the appellate court should reverse and order a new trial only as to the part affected by the error); *Johnston*, 9 S.W.3d at 284 (stating appellate courts have broad discretion to remand in the interest of justice).

## V. Conclusion

The trial court erred by granting a directed verdict as to liability on Truckers's Note claim and by refusing to submit a jury question on Rente's conversion claim regarding the equipment. The trial court did not err either by refusing to submit a jury question on the claim for conversion of profits or other payments allegedly owed Rente or by refusing to submit a jury question on the fraud claim. Nor did the trial court err by entering judgment that Rente take nothing on its claim for breach of the Lease Agreement. Therefore, we overrule part of the second issue and the third and sixth issues. We conclude that no evidence supports the jury's finding of $25,000 in damages on Truckers's claim under the Lease Agreement, but that the issue was contested and there was sufficient evidence to show that Truckers suffered some damage as a result of the actions alleged to constitute breach of the Lease Agreement. Accordingly, we sustain part of the second issue and the first and fifth issues, reverse the trial court's judgment regarding Rente's claim for conversion of the equipment and

Truckers's claims for breach of the Note and the Lease Agreement, sever these claims, and remand them for a new trial. We affirm the remainder of the trial court's judgment.