Affirmed and Memorandum Opinion filed May 7, 2009








Affirmed and Memorandum Opinion filed May 7, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00958-CV

____________

 

Y NGOC MAI AND HUONG MAI-NGUYEN, Appellants

 

V.

 

FARMERS TEXAS COUNTY MUTUAL
INSURANCE COMPANY, Appellee

 



 

On Appeal from the 127th
District Court

Harris County, Texas

Trial Court Cause No. 2005-74300

 



 

M E M O R A N D U M   O P I N I O N








Appellants, Y Ngoc Mai and Huong Mai-Nguyen, appeal from a
take-nothing judgment in their lawsuit against appellee, Farmers Texas County
Mutual Insurance Company.  Appellants sued Farmers for coverage of damages
stemming from an automobile accident.  Appellants specifically sought coverage
under the uninsured motorist provision of the policy, which requires that there
have been contact between the insured=s vehicle and the
uninsured motorist=s vehicle.  Appellants additionally
alleged that Farmers acted in bad faith in investigating  and refusing to
promptly pay the claims.  After trial before a jury, the court below granted a
directed verdict against appellants= bad faith claim,
and the jury found that there was no contact between the vehicle containing
appellants and the alleged uninsured motorist=s vehicle.  In
three issues, appellants contend that: (1) the trial court erred in refusing
proposed jury questions regarding the bad faith investigation claim; (2) the
trial court erred in granting a directed verdict against the bad faith
investigation claim; and (3) the jury verdict on contact was against the great
weight and preponderance of the evidence.  We affirm.

I.  Background

It is undisputed that at the time of the accident made the
basis of this lawsuit, Y Ngoc Mai and Huong Mai-Nguyen, husband and wife, were
insured by Farmers.  As stated above, appellants sued Farmers for coverage
under the uninsured motorist provision of the insurance policy.  This provision
covers damages caused by, among other things, a hit-and-run driver whose
identity cannot be identified, so long as the Auninsured vehicle@ made Aactual physical
contact@ with the vehicle
driven by the insured.  Farmers purported to decline coverage based on an
alleged lack of contact between the vehicles.  According to the police report
filed regarding the accident in question, the accident occurred on Interstate
95 in Sussex County, Virginia.  Mai was driving another person=s Ford Expedition
at the time of the accident.








Only three witnesses testified at trial:  Huong Mai-Nguyen
and Y Ngoc Mai testified on their own behalf, and Linda Ennis testified for
Farmers.  Mai-Nguyen testified that on September 6, 2004, while traveling
through Virginia, her husband, Mai, was driving while she was sitting in the
back seat.  Mai-Nguyen Awas closing her eyes but . . . wasn=t asleep deeply,@ when she heard
something hit the vehicle in which she was riding.  She opened her eyes as the
vehicle spun and ran into trees on the side of the road.  The other vehicle did
not stop.  Mai was rendered unconscious in the accident and had to be Acut . . . out of
the car.@  He was then
flown by helicopter to a hospital.  Mai-Nguyen suffered more minor injuries as
a result of the accident, and she testified regarding the treatment for those
injuries and associated pain and suffering.  She further testified regarding
her husband=s condition and about having to take care of him
without help from anyone else.

On cross-examination, asked whether she was sleeping or Ajust dozing off,@ at the time of
the accident, Mai-Nguyen responded that she Awas dozing off.@  She admitted
that she never saw the other vehicle involved in the accident and did not see
any impact between the two vehicles.  She again testified that she heard the
impact.  She said that she never had any direct contact with Farmers regarding
the claim but relied on her attorney to communicate with Farmers.

Mai testified that he remembers that a vehicle in the lane
to the right swerved into his lane while passing and hit the right front
portion of his vehicle.  He remembers hearing the impact of the collision but
does not recall how hard the impact was.  The vehicle Mai was driving then went
to the left and struck an object.  He said that he does not remember any more
about the accident.  He said that he never spoke regarding the accident to the
police, Farmers, or State Farm (the insurer of the vehicle that appellants were
in at the time of the accident).  In fact, no one took a statement from him
regarding the accident until his deposition.  Mai further testified about the
physical injuries and limitations and the pain and suffering he has endured as
a result of the accident.  Mai suggested that the police report, discussed in detail
below, might be incorrect because the other vehicle Ahit on the
right-hand side [of] the front end of [Mai=s] vehicle.@








Linda Ennis testified that she is the Farmers claims
representative who handled appellants= claims.  She
recounted gathering information from the law firm representing appellants
(appellants having obtained legal representation before filing a claim), as
well as from State Farm.  She further explained what she personally did to
investigate the claim.  When she requested an opportunity to interview Mai,
someone named Alice at the law firm representing appellants told Ennis that Mai
Adidn=t remember the
accident at all.@  Ennis relied on this representation in
concluding that there would be no point in taking Mai=s statement. 
Ennis did take a statement from Mai-Nguyen.  According to Ennis, Mai-Nguyen
explained that she was sitting in the vehicle=s middle row, Ajust . . . closing
her eyes to sleep,@ when she heard a Abang,@ and the vehicle
started Alosing control.@  Also according
to Ennis, Mai-Nguyen was not able to say definitely whether another vehicle had
been involved in the accident.

Ennis also testified regarding the police report which was
admitted as an exhibit at trial.  According to Ennis, the report showed that
there was no contact between the vehicle appellants were in and the vehicle
that allegedly forced them off the road.  This testimony appears to be a reasonable conclusion from the
report itself.  First, the report=s diagram of the damage to appellants= vehicle shows no damage to the
passenger side as a result of the accident.  The instructions on the report
direct the officer to Acircle initial impact@; the circled areas in the diagram
are all on the left side and roof, not the passenger=s side.  Second, the description of
the accident in the report mentions contact with trees after the vehicle left
the roadway but does not indicate that any contact occurred with another
vehicle.  The report specifically says that the other vehicle Acut-off@ appellants= vehicle, not that it Ahit,@ Acontacted,@ or Aforced@ appellants= vehicle from the road.  Third, the
diagram of the accident clearly shows contact with first a stand of small trees
and then a stand of large trees just off the roadway, but it does not show any
contact with another vehicle.[1]








Ennis further testified that she requested information from
appellants= attorney=s office for the
purpose of locating other passengers in the vehicle at the time of the
accident.  She was told that they would Afollow up and call
back.@  She eventually
managed to speak with one of the front seat passengers, Truong Phouc, and after
she did so, Farmers determined to deny appellants= claims under the
uninsured motorist provision because of a lack of contact between the vehicle
appellants were in and any other vehicle.[2] 
The decision was based on everything Ennis had learned during her
investigation, including information in the police report, Mai=s purported
inability to recall the accident, Mai-Nguyen=s admission that
her eyes were closed at the time of the accident, the statements made by
Truong, and the results of the prior investigation performed by State Farm.

On cross-examination, Ennis acknowledged that her notes
from the conversation she had with someone at appellants= attorney=s office actually
state that A[Alice] is not certain if he [Mai] remembers facts . .
. .@  On re-direct,
Ennis reiterated that it was her understanding from the conversation with Alice
that Mai Ahad no information to provide . . . because of his
memory loss.@  Ennis further stated that no one ever called her
back to say that Mai was ready to give a statement.  Ennis lastly commented
that it was difficult to locate eyewitnesses associated with this claims file,
despite her diligent efforts to do so.  The record also contains a printout
from a Farmers claims database, in which notes were entered detailing Ennis=s investigation of
appellants= claims.








Post-accident photographs taken of the vehicle in which
appellants rode are of little value.  Most of the photographs are of the driver=s side, which
sustained considerable damage from the impact with the trees.  In the only
photograph showing the passenger=s side (the side
that was allegedly contacted by the other vehicle) a blue tarp obscures most of
the vehicle.  The photograph does show a dent located on the passenger side of
the front bumper, but there is no way to tell whether the dent was caused by
contact with another vehicle.  Mai acknowledged in his testimony that
photographs taken at the impound lot, such as this one, appear to show damage
to the vehicle that does not appear in photographs taken at the scene of the
accident.  Specifically, the driver=s side of the
front bumper has considerable damage at the impound lot and appears pristine at
the scene of the accident.  This discrepancy in the photographs suggests that
the front bumper was damaged in transport from the scene.

In their brief, appellants also reference a Amark@ on the right
front of the vehicle; however, appellants are not specific as to where this
supposed mark is to be found.  The photograph of the passenger=s side does show
some white patches on the ledge below the headlight and on the flat piece in
front of the headlight.  These patches appear more likely to be reflections of
sun or clouds than markings from another vehicle.  Possible scuff marks also
appear at the bottom of the bumper.  It is impossible to tell the cause; they
may have occurred during transit.

After both sides rested, the trial court granted a directed
verdict against appellants= bad faith investigation claims.  The
court also rejected proposed jury questions on these claims.

In the charge, Jury Question No. 1 was submitted as
follows:

On September 6, 2004, was the
occurrence in question caused by an uninsured motor vehicle?

 

An uninsured motor vehicle is a hit
and run vehicle whose operator or owner cannot be identified and which makes
[sic] actual physical contact with the vehicle being driven by Y NGOC MAI.

The
jury answered Ano.@  Because of this negative response, the
jury did not answer any other questions in the charge, including an inquiry as
to whether the unidentified driver proximately caused the accident, and what
sum of money would compensate appellants for their injuries.  The trial court
entered a take-nothing final judgment consistent with its directed verdict and
the jury=s answer to
Question No.1.

 

 








II.  Evidence of Contact

We begin with appellants= third issue, in
which they contend that the jury=s finding of no
contact between the vehicle driven by Mai and another vehicle was against the
great weight and preponderance of the evidence.  We utilize the normal
standards of review in considering this challenge to the factual sufficiency of
the evidence.  See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402,
406-07 (Tex. 1998).

Appellants emphasize their own testimony in asserting that
there was contact between the vehicle that they were in and another vehicle. 
Mai-Nguyen testified to hearing something hit the vehicle as she was falling
asleep.  Mai also testified about hearing an impact when the other vehicle
swerved towards the one he was driving.  As sole judge of the credibility of
the witnesses and the weight to be assigned their testimony, the jury was free
to disregard appellants= self-serving testimony.  See City of
Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005); Rosenblatt v. Freedom
Life Ins. Co. of Am., 240 S.W.3d 315, 319 (Tex. App.CHouston [1st
Dist.] 2007, no pet.).  The jury could have reasonably discounted Mai=s testimony
because he acknowledged he had very limited memory of the accident, and there
was evidence suggesting that he previously did not remember anything about the
accident.  Similarly, the jury could have discounted Mai-Nguyen=s testimony
because she was falling asleep at the time of the accident and did not actually
see another vehicle, much less see one strike the vehicle in which she was
riding.  Farmers= counsel even suggested during closing
argument that Mai-Nguyen may have felt the vehicle she was in strike the small
trees noted in the police report and may have mistaken that impact for impact
with another vehicle.








Appellants further emphasize that the police report of the
accident does not expressly state that there was no impact between vehicles. 
On the other hand, the detailed police report also does not contain any
indication that there was contact.  The damage diagram in the report shows no damage to the
passenger=s side.  In his report, the investigating officer  noted contact with
small and large trees after the vehicle left the roadway but did not suggest
that any contact occurred with another vehicle.  Further, he stated that the
other vehicle Acut-off@ appellants= vehicle, not that it Ahit,@ Acontacted,@ or Aforced@ the vehicle from the road.  Lastly,
the officer=s diagram of the accident again clearly shows contact with the two stands
of trees but does not show any contact with another vehicle.  Contrary to
appellants= argument, the jury could have determined that the
absence of any indication of contact in the fairly detailed police report
supported the conclusion that there was no contact.

In his  report, the officer also lists, in addition to
appellants, four other occupants of the vehicle driven by Mai.  The jury could
reasonably have found it significant that none of these apparent acquaintances
testified at trial in support of appellants= version of
events.  Furthermore, in her testimony, Linda Ennis, Farmers= claims representative,
testified that shortly after she interviewed one of the other passengers,
Farmers denied appellants= claim due to a lack of contact with
another vehicle.

Lastly, appellants point to the one admitted photograph of
the passenger=s side of the vehicle.  Although this photograph is
evidence that the vehicle was damaged on the passenger=s side at some
point, it is not particularly suggestive of contact with another vehicle.  For
one thing, the police report does not indicate any damage in that location
immediately after the accident.  Furthermore, as discussed above, the admitted
series of photographs appears to demonstrate that the vehicle=s front bumper
sustained damage either while being transported to the impound lot or at the
impound lot itself.  Based on these two facts, the jury could well have
concluded that the bumper damage was not caused by impact with another vehicle
at the time of the accident.  Although appellants reference a Amark@ on the right
front of the vehicle, they do not specifically identify its location.  The
small white patches on the vehicle appear more likely to be reflections of sun
or clouds than impact markings, and it is impossible to tell what may have made
scuff marks on the bottom of the bumper near the aforementioned dent.  In
short, the photographs do not necessarily demonstrate that the vehicle Mai was
driving was struck by another vehicle.








Based on the foregoing analysis, we cannot say that the
jury=s verdict was
against the great weight and preponderance of the evidence.  Accordingly, we
find that the evidence was factually sufficient to support the verdict and
overrule appellants= third issue.

III.  Directed Verdict

We now turn to appellants= second issue in
which they contend that the trial court erred in granting a directed verdict
against their bad faith investigation claims.  Section 541.060 of the Texas
Insurance Code provides as follows:

' 541.060.  Unfair Settlement Practices

 

(a) It is . . . an unfair or deceptive act or practice in the business
of insurance to engage in the following unfair settlement practices with
respect to a claim by an insured or beneficiary:

. . . .

(7) refusing to pay a claim without
conducting a reasonable investigation with respect to the claim . . . .

Tex.
Ins. Code ' 541.060.  Section 541.151 of the Insurance Code
authorizes A[a] person who sustains actual damages@ to bring a
private action Afor those damages@ caused by unfair
or deceptive acts or practices in the business of insurance.  Id. ' 541.151.  Thus,
clearly, in order to have a viable cause of action for unfair or deceptive acts
or practices under the Code, a plaintiff must present evidence of damages.  See
id.; Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 198 (Tex.
1998) (explaining that a bad faith investigation claim requires proof of
damages resulting from the failure to properly investigate).








In moving for a directed verdict on the bad faith
investigation claims, Farmers listed three grounds, including that appellants
offered no evidence of damages stemming from the alleged bad faith
investigation.  In their brief, appellants point to evidence that they contend
establishes that Farmers failed to properly investigate their claims, but they
point to no evidence of any damages resulting from such investigative failure. 
They simply do not address the element of damages.  During oral argument, when
asked whether there was any evidence adduced regarding bad faith investigation
damages, appellants= counsel suggested that all of the damages
evidence at trial was relevant to the bad faith claims because appellants= claims had been
denied.  This position, that expected policy benefits can equate to bad faith
damages, has been firmly rejected by the Texas Supreme Court.  See Castaneda,
988 S.W.2d at 198; Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341
(Tex. 1995).

Because appellants fail to cite any evidence in the record
supporting the required damages element for their bad faith investigation
claims, we cannot hold that the trial court erred in granting a directed
verdict against those claims.  Accordingly, we overrule appellants= second issue.

IV.  Jury Charge Questions

In their first issue, appellants contend that the trial
court erred in refusing to submit their proposed jury questions on their bad
faith investigation claims.  Under this issue, appellants make practically the
same arguments that they made under their second issue, i.e., that there
was plenty of evidence that Farmers failed to properly investigate their
claims.  Again, appellants have failed to address the question of whether any
damages flowed from the failure to properly investigate.  To be entitled to
submission of a cause of action to the jury, a plaintiff must present evidence
supporting each of the elements of that cause of action.  See C.M.
Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768, 792 (Tex. App.CHouston [1st
Dist.] 2004, no pet.); Rente Co. v. Truckers Exp., Inc., 116 S.W.3d 326,
332-34 (Tex. App.CHouston [14th Dist.] 2003, no pet.);
Nelson v. Clements, 831 S.W.2d 587, 590 (Tex. App.CAustin 1992, writ
denied).  Without evidence of damages resulting specifically from the alleged
failure to properly investigate, appellants were not entitled to have the bad
faith investigation claims submitted to the jury.








Appellants, however, additionally contend that the trial
court=s refusal to
submit bad faith related jury questions, in effect, forced the jury to take
Farmers= due diligence as
a given.  Moreover, according to appellants, taking Farmers= due diligence as
a given unduly influenced the jury to conclude that there was no contact
between the two vehicles and thus no coverage.  In support of this contention,
appellants cite Rivera v. Herndon Marine Products, Inc., 895 S.W.2d 430
(Tex. App.CCorpus Christi 1995, writ denied).  In Rivera,
the captain of a shrimp boat brought an action for injuries sustained on the
vessel; among other things, he claimed that the unseaworthiness of the vessel
proximately caused his injuries.  895 S.W.2d at 432.  Finding that there was
evidence to support this claim, the court of appeals held that the trial court
erred in not submitting the seaworthiness issue to the jury.  Id. at
433-35.  In Rivera, the seaworthiness issue was directly related to the
captain=s damages claims;
in other words, he claimed that the unseaworthiness caused his damages.  Here,
any finding of failure to properly investigate would not by itself mean that
the claims were covered under the insurance policy; in other words, the alleged
failure to properly investigate did not result in the claimed damages.  See
Castaneda, 988 S.W.2d at 198; Stoker, 903 S.W.2d at 341.  Thus, Rivera
does not support appellants= contention that the trial court erred in
refusing jury questions on bad faith.








Furthermore, the record does not support appellants= fear that the
jury interpreted the lack of a submission on bad faith investigation as
suggesting that Farmers performed a diligent and complete investigation.  The
record instead reveals that the jury was told nothing about the bad faith
claims after the directed verdict was granted outside their presence.  The jury
charge does not reference them, the judge did not mention them before the jury
retired for deliberations, and neither counsel mentioned them in closing
argument.  Moreover, the judge instructed the jury in the charge to base its
answers solely on the evidence presented.  In the absence of any evidence to
the contrary, we assume the jury followed that instruction.  See Phillips v.
Phillips, 820 S.W.2d 785, 787 n.2 (Tex. 1991); In re K.C., 219
S.W.3d 924, 932 (Tex. App.CDallas 2007, no pet.).  Accordingly, we
overrule appellants= first issue.

We affirm the trial court=s judgment.

 

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.









[1]  The report also shows that there were six occupants
in the wrecked vehicle, including appellants and four others.  The report does
not specify how the information recounted therein was obtained.





[2]  Ennis was not permitted to testify regarding what
Truong told her because of the evidentiary rules barring hearsay testimony.