**Susan WHEELER, Appellant,**

v.

**Honorable Mayor William WHITE, Chief Harold Hurtt, and Officers' Civil Service Commission, Appellees.**

No. 14–08–00490–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 6, 2010.

Gregg M. Rosenberg, Houston, for appellant.

Marcus L. Dobbs, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

## MAJORITY OPINION

ADELE HEDGES, Chief Justice.

Susan Wheeler, an officer with the Houston Police Department ("HPD"), appeals from the trial court's dismissal of her lawsuit against appellees, Houston Mayor William White, Police Chief Harold Hurtt, and the Police Officers' Civil Service Commission. In her lawsuit, Wheeler sought declaratory and injunctive relief regarding the calculation of her promotion-eligibility score, such scores being used to determine promotions within HPD. Appellees filed a motion to dismiss, alleging that Wheeler did not have standing to bring the lawsuit and the trial court did not have jurisdiction to entertain the lawsuit. The trial court granted the motion. In two issues, Wheeler contends that the trial court erred in determining that (1) the court lacked jurisdiction, and (2) she lacked standing. We affirm.

### I. Background

Wheeler is an HPD sergeant seeking promotion to the rank of lieutenant. Pursuant to the Meet and Confer Agreement between the Houston Police Officer's Union ("HPOU") and the City of Houston, promotions within HPD are determined based on candidates' comparative scoring on a number of preset elements, including an independent assessment or evaluation, seniority, written testing, and education attainment. In her lawsuit, Wheeler complains that HPD misinterpreted the Meet and Confer Agreement and thereby miscalculated her total score for a certain promotional period. Specifically, she contends that HPD erred in not giving her credit for having earned a master's degree after having completed the written test. Apparently, HPD interprets the scoring rules as freezing the educational attainment criteria as of the time of the written testing. Wheeler further contends that had she received proper credit for her degree, she would have been promoted to lieutenant.

In her pleadings, Wheeler sought a temporary restraining order to prevent the alleged wrongful deprivation of her property rights to promotion. She also sought

a declaratory judgment interpreting the Meet and Confer Agreement such that postgraduate degrees awarded prior to completion of assessment scoring would be included in a candidate's total score. Appellees filed a motion to dismiss alleging, as will be explained more fully below, that the trial court did not have jurisdiction and that Wheeler did not have standing. The trial court granted the motion and dismissed Wheeler's lawsuit without specifying the grounds therefor.

## II. Standing

In their motion to dismiss, appellees asserted, inter alia, that Wheeler does not have standing to sue under the Meet and Confer Agreement. In her response, Wheeler contended that she does have standing to sue under the agreement. Standing is a constitutional prerequisite for a party to bring a lawsuit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). The issue of standing focuses on the question of who may bring a lawsuit. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex.1998). Standing is a prerequisite to subject matter jurisdiction, and a trial court must have subject matter jurisdiction in order to entertain a particular case. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 553–54 (Tex.2000). A court has no jurisdiction over a claim pursued by a plaintiff who lacks standing to assert the claim. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex.2008). When a plaintiff lacks standing, the proper resolution is to dismiss the lawsuit. *Id.* Generally, the scope of review on appeal from the grant of a motion to dismiss is limited to the grounds raised in the motion. *Williams v. Nealon*, 199 S.W.3d 462, 464–65 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

### A. Meet & Confer Agreement

As stated, both sides base their standing arguments on the Meet and Confer Agree-ment between the City and HPOU. Under provisions of the Texas Local Government Code, if the Meet and Confer Agreement satisfies certain criteria, then it preempts all contrary local ordinances, executive orders, legislation, or rules adopted by the state or a political subdivision or agent of the state. *See* Tex. Loc Govt Code 143.361. Furthermore, once these criteria are met, the agreement is enforceable and binding on the employer, the bargaining agent (HPOU), and the employee police officers (including Wheeler). *See id.* § 143.359. The criteria in question are as follows:

(1) HPOU qualifies as a "bargaining agent" under section 143.352(1);

(2) the agreement was made pursuant to Chapter 143, Subchapter J, of the Local Government Code;

(3) the agreement has been ratified by a majority vote of the City of Houston's governing body; and

(4) the agreement has been ratified by a majority vote in an election held by HPOU under section 143.360.

Tex. Loc. Gov't Code §§ 143.352, 143.359–.361.

Although neither Wheeler nor appellees offered evidence below to establish that the Meet and Confer Agreement met these criteria, both assert the validity, enforceability, and applicability of the agreement in their standing arguments. Furthermore, Wheeler not only doesn't contest the enforceability and applicability of the agreement, she is specifically suing to enforce its provisions. Her very cause of action is premised on the enforceability of the Meet and Confer Agreement. If the agreement is not controlling, then she has no cause of action. In other words, the applicability of the agreement is an element of proof for Wheeler. Because

Wheeler premised her cause of action on the enforceability of the agreement, she has judicially admitted its enforceability for purposes of this lawsuit. *See, e.g., Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex.2000) ("A judicial admission must be a clear, deliberate, and unequivocal statement ... and occurs when an assertion of fact is conclusively established in live pleadings ....") (internal punctuation and citation omitted). Because of Wheeler's judicial admission, appellees were relieved from having to prove the enforceability of the agreement in making their arguments on standing. *See id.* ("A judicial admission not only relieves an adversary from making proof of the fact admitted but also bars the party himself from disputing it.") (internal punctuation omitted). We premise our opinion on the Meet and Confer Agreement's satisfaction of the Local Government Code criteria and its effective operation as a statute.

■■ A party suing under a statute, or as here an agreement with the force of a statute, must establish standing, or the right to make a claim, under that statute or agreement. *See Exxon Corp. v. Emerald Oil & Gas Co.,* —— S.W.3d ——, —— (Tex.2009). In other words, the agreement itself provides the framework for the standing analysis. *Cf. id.* We will not imply a right of enforcement simply because a party suffered harm from a breach of the agreement; we look to the intent as expressed in the document. *Cf. id.*

■ Moreover, what is typically referred to as "standing" in a contractual context, *i.e.,* "standing" to sue on the contract, is not the same as standing in the jurisdictional sense, even though the analyses of the two types of standing contain similar elements. *See Yasuda Fire & Marine Ins. Co. of Am. v. Criaco,* 225 S.W.3d 894, 898 (Tex.App.-Houston [14th Dist.]

2007, no pet.). Here, there is no practical distinction, however, because the agreement in question operates as a statute and trumps all conflicting rules and legislation. *See* Tex. Loc Govt Code 143.361.

## B. Evidence

As indicated, the substance of the parties' standing arguments requires reference to the provisions of the Meet and Confer Agreement. Appellees attached portions of the agreement to their motion to dismiss as well as to a supplemental motion. Wheeler quoted a different portion of the agreement in her response to the motion. Neither side provided a complete copy of the agreement. Therefore, a question arises as to whether we can properly analyze the agreement in the absence of a complete copy.

Generally, in interpreting contracts or other documents, we examine the writing as a whole in an effort to harmonize and give effect to all provisions so that none is rendered meaningless. *See rePipe, Inc. v. Turpin,* 275 S.W.3d 39, 44 (Tex.App.-Houston [14th Dist.] 2008, no pet.). However, the Texas Supreme Court has held that this rule does not necessarily apply in the context of analyzing the right to sue under a contract. *See Tex. Farmers Ins. Co. v. Murphy,* 996 S.W.2d 873, 879 (Tex.1999); *Paragon Sales Co. v. New Hampshire Ins. Co.,* 774 S.W.2d 659, 661 (Tex.1989). In *Murphy* and *Paragon Sales,* the court explained that in order to prove a right to sue under an insurance policy, a plaintiff was required to establish only those provisions of the policy allowing recovery. *Murphy,* 996 S.W.2d at 879; *Paragon Sales,* 774 S.W.2d at 661. Upon such proof, it was incumbent upon the defendant to plead and prove any provisions that would bar recovery. *Murphy,* 996 S.W.2d at 879; *Paragon Sales,* 774 S.W.2d at 661. Although these cases involved in-

surance contracts, their method of proof is readily adaptable in disputes concerning other types of contracts.[1] Indeed, in the jurisdictional context, the Texas Supreme Court has not placed the sole burden of producing evidence on either the party urging standing or jurisdiction or the party contesting standing or jurisdiction.

In *Texas Department of Parks and Wildlife v. Miranda,* the supreme court explained that when a dilatory plea, such as a plea to the jurisdiction or similar procedural device, challenges the existence of material facts supporting jurisdiction, the court must consider the relevant evidence submitted by the parties. 133 S.W.3d 217, 227 (Tex.2004). If the evidence is undisputed or fails to raise a question of fact, the court should rule on the plea as a matter of law. *Id.* at 228. After a defendant asserts, and supports with evidence, that the court lacks subject matter jurisdiction, the plaintiff must show a disputed fact issue exists in order to avoid dismissal for want of jurisdiction. *Id.* The court further explained that the standard for such jurisdictional disputes "generally mirrors that of a [traditional] summary judgment." *Id.* That a court's jurisdictional analysis is framed by the parties' arguments and competing evidence is further illustrated by the supreme court's opinion in *Bland Independent School District v. Blue,* 34 S.W.3d 547 (Tex.2000). In *Bland,* a standing case, the court stated that there are times when a plaintiff must produce evidence to prove

jurisdiction in response to a defendant's jurisdictional challenge. 34 S.W.3d at 554. Specifically, the court in *Bland* relied on the fact that the plaintiff did not dispute the veracity of certain evidence produced by the defendant. *Id.* at 555. The court, indeed, took that evidence as conclusive of certain essential facts. *Id.* at 555–56.

Here, appellees filed their motion to dismiss and attached portions of the agreement that they deemed relevant to the analysis. In response, Wheeler cited to a different portion of the agreement (the preamble) as being relevant to the analysis. Ultimately, there is no dispute by the parties that all portions of the agreement relevant to the jurisdictional analysis are in the record. *See, e.g., C & C Partners v. Sun Exploration and Prod. Co.,* 783 S.W.2d 707, 714 (Tex.App.-Dallas 1989, writ denied) ("Although the entire contract should be considered so that its parts are interpreted together with all other parts, the parties' intent concerning a particular matter may be determined from only one portion of the contract."). Wheeler, specifically, has not complained in the trial court or on appeal regarding the absence of any portion of the agreement from the record. In other words, the parties dispute only the interpretation of the evidence provided; they do not complain that any relevant portion was omitted. Consequently, under *Murphy, Paragon Sales, Miranda,* and *Bland,* the evidence provided is sufficient for a determination on standing.[2]

1. As the court explained in *Paragon Sales,* there are particular reasons for allowing this method of proof in the insurance context, including that a third-party beneficiary attempting to establish standing would frequently have less access to policy documentation than would the insurer. 774 S.W.2d at 661. However, the existence of reasons unique to the insurance context does not necessarily mean that the methodology would be inapplicable in other contexts.

2. The dissent maintains that we are constrained from considering a partial contract under our prior holding in *Crawford v. Pullman, Inc.,* 630 S.W.2d 377 (Tex.App.-Houston [14th Dist.] 1982, no writ). The key issue in *Crawford* was whether a plaintiff in a suit on a sworn account was entitled to summary judgment when only portions of the two contracts between the parties were offered as summary judgment evidence and the defendant filed a verified denial. *Id.* at 379. The partial lease

## C. Analysis

■ Finally, we turn to the parties' assertions concerning standing. In arguing that Wheeler lacked standing to assert her claims, appellees specifically cited article 5 of the Meet and Confer Agreement wherein it states that: "A challenge to any term of this Agreement either by interpretation and/or application which applies to an officer or to the MBA [Majority Bargaining Agent], may be filed only by the HPOU, in its capacity as the MBA or the City."[3] This is exactly what Wheeler is trying to do in this case: challenge an interpretation of the agreement and its application to her. In her petition, Wheeler expressly asserts that appellees are misinterpreting and misapplying the promotional scoring rules contained in the agreement, and she seeks a declaratory judgment stating that "postgraduate degrees (earned prior to the completion of . . . assessment scoring) count toward points to be factored into [the] overall score, as contemplated by the

express terms of the agreement." In her brief, she repeatedly emphasizes that the point of her lawsuit is to obtain an interpretation of the scoring rules of the agreement. Thus, Wheeler's bringing of the present lawsuit runs contrary to the express language in the agreement permitting only the City and HPOU to file challenges implicating the interpretation or application of terms of the agreement to officers such as Wheeler.

■ In her response to the motion, Wheeler quoted from the agreement's preamble in arguing that she was an intended third-party beneficiary of the agreement entitled to bring suit to enforce its provisions. The quoted portion states: "The parties to this Agreement are [HPOU] as the sole and exclusive Majority Bargaining Agent for and on behalf of all Police Officers of [HPD] and the City of Houston, Texas (City)." While the preamble does state that HPOU entered the

agreements provided to the court each referenced "terms and conditions . . . on the reverse side hereof," but the plaintiff failed to provide the reverse sides of the agreements. *Id.* In finding that the absence of the referenced terms and conditions prevented summary judgment, we relied on a factually similar case from the Dallas Court of Appeals, in which the court stated:

> Here, the terms of the contract . . . may have been materially modified by the "conditions" found on the reverse side. . . . When a party sues upon an instrument, and that instrument affirmatively shows upon its face that it is subject to, and not merely cumulative of, terms and conditions found in another instrument, both must be introduced.

*See Tex. Int'l Airlines v. Wits Air Freight*, 608 S.W.2d 828, 830 (Tex.Civ.App.-Dallas 1980, no writ).

The circumstances of the present case are readily distinguishable from those faced in *Crawford* and *Texas International*. To begin with, unlike in *Crawford* and *Texas International*, there is no indication in the present case that there are potentially relevant portions of the agreement missing from the rec-

ord. To the contrary, the portions presented appear to be directly on point and self-contained regarding the right to sue under the agreement. Moreover, the issue here, as it was in *Murphy* and *Paragon Sales*, is whether a party had the right to sue under a contract, not, as in *Crawford* and *Texas International*, whether a party had proven a right to recover on a sworn account. A suit on a sworn account will typically require examination of all terms and conditions within an agreement, whereas a determination of standing to sue on an agreement will often be resolved by reference to only particular portions of the agreement. Consequently, we find that our prior decision in *Crawford* does not control the disposition of the right-to-sue issue currently before us.

3. Appellees further point to a latter section of article 5, placed after a discussion of the challenge process, which includes arbitration. This section states: "No appeal lies to a District Court for either party except for fraud, collusion or unless the arbitrator exceeded his/her jurisdiction."

contract "for and on behalf of all" HPD officers, the preamble says nothing about an individual police officer being able to sue. In fact, it could be read as supporting the conclusion that because HPOU is operating "for and on behalf of" police officers, the officers themselves may not be authorized to act on their own behalf. However, we need not go that far in deciding this case. Article 5 states that only HPOU can challenge the interpretation or application of the agreement. It does not state that HPD officer's cannot sue the City for any employment reason whatsoever; it merely restricts officers ability to sue over an interpretation or application of the agreement. Wheeler does not raise any further arguments in support of her standing to bring these claims.[4] Accordingly, the trial court did not err in holding that Wheeler did not have standing to pursue her claims. We overrule Wheeler's second issue.

Because we affirm the trial court's holding that Wheeler does not have standing to bring her claims, we need not consider the court's holding that it did not have jurisdiction over those claims. Consequently, we also overrule her first issue.

 We affirm the trial court's order of dismissal.[5]

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

The outcome of this case turns on the construction of a written contract. The fundamental rules of contract construction are premised on a court's consideration of all of a contract's terms. But this court cannot apply these rules in this case because the record contains only a portion of the contract. Though the appellees/defendants sought relief in the trial court based on a fifty-five page contract, they provided the trial court with only four of the contract's pages. With a limited exception recognized only in cases involving insurance policies, binding precedent requires that the court consider the whole contract before granting relief based on it. Rather than follow precedent from the Supreme Court of Texas and from this court requiring reversal and remand so that the trial court can review the entire contract, the majority instead holds for the first time in Texas jurisprudence that, in a non-insurance context, a party can obtain relief

---

**4.** To the extent Wheeler's briefing can be interpreted as arguing that she has standing under the Declaratory Judgments Act (DJA) to seek an interpretation of the agreement irrespective of limitations on such actions contained in the agreement itself, this argument fails for at least two reasons. First, the DJA does not create jurisdiction where jurisdiction would not otherwise exist. Tex. Civ. Prac. & Rem.Code § 37.003(a); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Medina v. Benkiser*, 262 S.W.3d 25, 28 (Tex.App.-Houston [1st Dist.] 2008, no pet.); *City of Houston v. Clark*, 252 S.W.3d 561, 568 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Second, the Meet and Confer Agreement preempts "all contrary local ordinances, executive orders, legislation, or rules adopted by the state or a political subdivision or agent of the state." *See* Tex.

Loc. Govt. Code 143.361. Thus, the agreement's restriction on who can bring an action seeking interpretation of the agreement would trump any alleged standing on the matter premised on the DJA.

**5.** We have previously held that when a party is found to lack "standing" to sue under a contract, the proper disposition is to render a take-nothing judgment rather than to dismiss the case for want of jurisdiction. *See Yasuda Fire*, 225 S.W.3d at 898. However, as discussed in detail above, we are assuming in the present case, based on the parties' representations, that the agreement in question operates as a statute. *See* Tex. Loc. Govt. Code 143.361. Consequently, dismissal was proper under the facts of this case. *See generally Inman*, 252 S.W.3d at 304.

based on a written contract without providing the court with all of the contract terms. I respectfully dissent.

## Today's holding conflicts with binding precedent.

Today's holding conflicts with this court's holding in *Crawford v. Pullman, Inc.*, 630 S.W.2d 377, 379–80 (Tex.App.-Houston [14th Dist.] 1982, no writ), a case that also involved unprovided portions of a written contract in a non-insurance context. In *Crawford*, the trial court granted a traditional motion for summary judgment in favor of a plaintiff suing on two lease agreements. *See id.* Though it was clear from the front pages of the lease agreements that there were terms on the reverse sides, the plaintiff provided the trial court with only the front sides. *See id.* Although the appellant did not complain about the appellee's failure to provide all of the terms of the agreements, this court held that the trial court erred in granting summary judgment without reviewing all the provisions of the written contracts. *See id.* Noting that the missing provisions (on the unprovided reverse sides) could be relevant to whether the appellee was entitled to judgment as a matter of law, this court held that a summary-judgment movant was not entitled to relief based on the two contracts because it did not prove all of the provisions of those contracts. *See id.*

In the case under review, appellees/defendants Mayor William White and Chief Harold Hurtt, in their official capacities, and the Officer's Civil Service Commission (collectively hereinafter the "City Parties") filed a plea to the jurisdiction in which they asserted that the trial court lacked jurisdiction over the claims asserted by appellant/plaintiff Susan Wheeler, based on the terms of the "Meet and Confer Agreement" between the Houston Police Officers' Union and the City of Houston (hereinafter "Agreement"). The trial court and this court review this type of a challenge in a plea to the jurisdiction under a legal standard substantially similar to the standard used to determine whether a traditional motion for summary judgment should be granted. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex.2004). In *Crawford*, this court held that a party could not obtain relief by means of a traditional motion for summary judgment if that relief is based on a contract and the record does not contain proof of all of the contract's terms. *See Crawford*, 630 S.W.2d at 379–80. The *Crawford* case is on point and precludes this panel from affirming the trial court's ruling based on an alleged lack of standing under the Agreement. *See id.* Because there is no decision from the Supreme Court of Texas or this court sitting en banc that is on point and contrary to the *Crawford* decision, this panel is bound by *Crawford*. *See Chase Home Finance, L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630–31 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.). But even if *Crawford* were not binding precedent, this court still should follow its sound rationale for requiring parties to produce the entire contract before the court grants any relief under it.

Among the unwelcome consequences of today's decision is this court's inability—in the absence of a complete agreement—to apply settled principles of contract construction. In construing the Agreement, this court's primary concern is to ascertain the true intentions of the parties as expressed in the Agreement. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). To achieve this end, this court must examine and consider the *entire* Agreement in an effort to harmonize and give effect to *all* the provisions of the Agreement so that *none* will be rendered

meaningless. *See id.; MCI Telecomm. Corp. v. Texas Util. Elec. Co.,* 995 S.W.2d 647, 650–52 (Tex.1999) (holding that, to determine whether a party may sue under an agreement as a third-party beneficiary, a court must examine the entire agreement in an effort to harmonize and give effect to all the agreement's provisions so that none will be rendered meaningless). No single provision of the Agreement should be given controlling effect; rather, *all* the provisions of the Agreement must be considered with reference to the whole instrument.[1] *See id.* Applying these rules is impossible when the court is not provided with the entire contract.

It would have been the work of a moment to submit a complete copy of the Agreement, yet the City Parties provided the trial court with less than ten percent of the document. Though the record contains approximately half of the Agreement's terms,[2] half of the terms are unknown to this court. Construction of the Agreement based only on the portions in our record may render one or more of the omitted terms meaningless. This court, however, has no way of knowing whether or to what extent the unknown provisions impact the known ones and no way to harmonize any provisions of the Agreement that may conflict or appear to conflict with the majority's construction of the Agreement.

Piecemeal parts of a contract have no separate existence. Every part of a contract adjusts itself to every other part, each assuming equal dignity as to legal validity. This means that in a contract-construction analysis, the ninety percent of the Agreement the City Parties did not submit is entitled to just as much consideration as the ten percent the City Parties did submit. Nonetheless, under the majority's analysis, neither the trial court nor this court need consider or even examine the entire Agreement in an effort to give effect to all the Agreement's provisions.

It is not unusual for contracts, especially lengthy ones, to contain provisions which seem to conflict. In these cases, the contract itself sometimes indicates which of two or more conflicting provisions should prevail. For example, in *Helmerich & Payne International Drilling Company v. Swift Energy Company,* this court confronted a paragraph in a contract with a clause stating "notwithstanding anything to the contrary contained in this agreement" and held that it took precedence over another paragraph that lacked such a clause, even though the paragraph lacking the clause was directly contrary to the paragraph with the clause. *See* 180 S.W.3d 635, 642–43 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Article 5 of the Agreement, on which today's decision turns, does not contain any clause stating "notwithstanding anything to the contrary contained in this agreement." Therefore, any omitted provision of the Agreement that contains such a clause would preempt and render ineffective anything to the contrary in article 5. *See id.*

Though *Webster* and other precedents hold that no single provision of the Agreement can be given effect without considering it in light of the rest of the Agreement, the majority indicates that, in some cases,

---

**1.** Similarly, whether a contract is ambiguous is a question of law that courts decide by examining the contract *as a whole* in light of the circumstances present when the parties entered into the contract. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996).

**2.** At most, the record contains all the odd-numbered pages and five even-numbered pages of the fifty-five-page Agreement.

courts can give effect to part of a contract without considering the remainder of the contract. The majority cites *C & C Partners v. Sun Exploration & Production Co.*, for this proposition. *See* 783 S.W.2d 707, 714 (Tex.App.-Dallas 1989, writ denied), *disapproved of on other grounds*, *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998). However, a review of the *C & C Partners* case reveals that it stands for the unremarkable proposition that, even though courts should consider a provision in light of all other provisions of the contract, in some cases, only one provision speaks to an issue, and the other provisions do not alter the analysis. *See id.* In the *C & C Partners* case, the court had before it all of the provisions of the contracts in question. *See id.* at 714–15. Furthermore, that case does not stand for the proposition that in some cases a court may construe one part of a contract without considering it in light of all the other provisions of the contract. *See id.* Even if the *C & C Partners* court had so held, this holding would conflict with *Webster* as well as with a recent en banc opinion from this court. *See Webster*, 128 S.W.3d at 229; *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 219 (Tex.App.-Houston [14th Dist.] 2009, pet. filed) (en banc). "[W]e must presume that the parties to a contract intended *every* clause to have some effect, we cannot selectively grant controlling effect to the individual provisions appellants cite. Instead, we examine the entire contract and harmonize its provisions so that none are rendered meaningless." *Ross*, 296 S.W.3d at 219 (emphasis in original) (citations omitted).

The majority suggests that Wheeler and the City Parties have agreed that all portions of the Agreement relevant to the jurisdictional issues in this case are in the record. This is inaccurate. Though Wheeler has assigned error as to the trial court's conclusion that she lacks standing, no party has asserted that all relevant portions of the Agreement are in the record, so neither side has taken a position on this issue. Nonetheless, one might presume that if the parties thought other portions of the Agreement were relevant, then they would have made sure that at least those portions of the Agreement were in the record. However, in the absence of the parties' express position on this issue, this court simply does not know the parties' mental thought processes.[3]

More importantly, even if the parties had stipulated that the parts of the Agreement that are absent from the record are totally irrelevant to the issues in this case, it is not clear that the court could give effect to this stipulation. Texas courts generally treat contract terms more as the law between the parties than as a fact that can be stipulated away. For example, even if Wheeler and the City Parties had stipulated that the Agreement is unambiguous, this court still would have to conduct an independent inquiry into whether the Agreement is ambiguous, and if this court were to conclude that the Agreement is ambiguous, it would so hold, despite the stipulation of the parties to the contrary. *See, e.g., Watkins v. The Krist Law Firm, P.C.*, No. 14–02–00291–CV, 2003 WL 21786173, at *3–5 (Tex.App.-Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem. op.) (holding that contract was ambiguous even if the parties agreed that the contract was

---

**3.** For example, one or both sides may have believed that this court could rely on the copy of the Agreement that is in the record from the temporary-injunction hearing. Likewise, one or both sides mistakenly may have be-

lieved that the partial, one-sided copy of the Agreement in the record from the temporary-injunction hearing is a complete, two-sided copy.

unambiguous); *City of Bunker Hill Vill. v. Memorial Vills. Water Auth.,* 809 S.W.2d 309, 310 (Tex.App.-Houston [14th Dist.] 1991, no writ) (holding that court was not bound by parties' agreement that contracts were unambiguous and holding that contracts were ambiguous).

Courts determine a contract's meaning from all the contract's language, not from the piecemeal portions of the contract cited (or provided) by the parties. *See Tower Contracting Co. v. Flores,* 157 Tex. 297, 302 S.W.2d 396, 399 (1957); *Crawford,* 630 S.W.2d at 379–80. Indeed, a court can base its construction of a contractual provision on parts of the contract not cited to the court by any party. *See Stonehill– PRM WC I, L.P. v. Chasco Constructors, Ltd., L.L.P.,* No. 03–08–00494–CV, 2009 WL 349136, at *6–8 (Tex.App.-Austin Feb. 11, 2009, no pet.) (mem. op.); *Christus Spohn Health Sys. Corp. v. Nueces County Hosp. Dist.,* 39 S.W.3d 626, 629–31 (Tex. App.-Corpus Christi 2000, no pet.). A court simply cannot properly apply the rules of contract construction to isolated pages, nor can a court properly determine the meaning of a contract's terms without examining them in the context of the entire agreement.

The majority concludes that, under *Miranda,* the City Parties did not need to prove up the entire Agreement or provide the trial court with all of its terms. *See ante* at p. 230. However, the plaintiffs in *Miranda* asserted tort claims based on personal injuries. *See Miranda,* 133 S.W.3d at 220–21. There was no issue in *Miranda* as to whether a party can obtain relief based on a contract without providing the court with all of the contract terms; indeed, there were no contracts involved in *Miranda. See id.* at 220–34.

As noted by the majority, the *Miranda* court established that the procedure for adjudicating pleas to the jurisdiction in-

volving evidence is substantially similar to the standard used to determine whether a traditional motion for summary judgment should be granted. *See id.* at 227–28. The *Miranda* court noted that, in these cases, the governmental entity is required "to meet the summary judgment standard of proof." *Id.* at 228. The *Miranda* court established that these pleas to the jurisdiction should follow the procedure for traditional motions for summary judgment; however, nothing in *Miranda* changed the law regarding this procedure that the *Miranda* court applied to pleas to the jurisdiction. Therefore, *Miranda* did not address or disapprove in any way the *Crawford* case from this court. *Compare id.* at 226–29, *with Crawford,* 630 S.W.2d at 379–80.

The majority seems to suggest that, because the City Parties presented evidence regarding the Agreement, the burden then shifted to Wheeler to present evidence challenging the City Parties' arguments regarding the Agreement. However, the City Parties attached no evidence at all to their plea to the jurisdiction. On the day of the hearing on their plea to the jurisdiction, the City Parties filed a brief that included four pages purportedly from the Agreement. Under precedent from this court, Wheeler did not have the burden to respond to these four pages of evidence because the City Parties did not prove their entitlement to judgment as a matter of law by proving up the entire Agreement. *See Crawford,* 630 S.W.2d at 379– 80; *Keathley v. J.J. Invest. Co.,* No. 06– 08–00082–CV, 2009 WL 1953436, at *3 (Tex.App.-Texarkana July 9, 2009, no pet.) (mem. op.) (holding that movant for traditional summary judgment did not satisfy its initial burden because, among other things, it failed to prove the terms of the contract).

**The insurance-policy rule should not be extended to apply to all contracts.**

From time to time, the Supreme Court of Texas has created special rules applicable to the construction and interpretation of insurance contracts in recognition of the unique relationship between the insured and the insurer. As discussed more fully below, this species of contract rules is confined to the insurance context. Significantly, because the case under review does not involve an insurance contract, these rules do not apply to the Agreement, and this court should not expand these rules to other types of contracts.

In *Paragon Sales Company v. New Hampshire Insurance Company*, the Supreme Court of Texas held that an alleged third-party beneficiary under an insurance policy could recover on the insurance policy without producing a copy of the entire policy. *See* 774 S.W.2d 659, 660–61 (Tex. 1989) (per curiam). The *Paragon Sales* court stated that "Texas law does not require that a plaintiff seeking recovery *under an insurance policy* must introduce the entire policy into evidence to prove the terms of the contract." *Id.* at 661 (emphasis added). The *Paragon Sales* holding applies only to an insurance contract, and the court did not state that this rule would apply in any other context.[4] *See id.* at 660–61.

In *Texas Farmers Insurance Company v. Murphy*, the Supreme Court of Texas held that an insurance company failed to

preserve error in the trial court regarding an affirmative defense to coverage. *See* 996 S.W.2d 873, 878–80 (Tex.1999). In *Murphy*, there was no failure to prove all the terms of the insurance policy. *See id.* The *Murphy* court stated the following: "A plaintiff seeking recovery *under an insurance policy*, however, must prove only those provisions that allow recovery. If there are any contractual provisions that could limit or bar recovery, it is incumbent *on the insurer* to plead and prove them." *Id.* at 879 (emphasis added) (footnotes omitted). Thus, even in these dicta from *Murphy*, the high court limited the statement of law to the insurance context.[5] *See id.* As with other rules, the Supreme Court of Texas created this exception to apply in this singular context. Applying this limited rule in a broader context undermines longstanding principles of contract construction.

Because *Paragon Sales* and *Murphy* do not apply to the non-insurance context and because this court is constrained by its prior precedent in *Crawford*, this court is duty-bound to follow *Crawford* in the non-insurance context.[6] *See Chase Home Finance, L.L.C.*, 309 S.W.3d at 630–31.

The majority does not cite, and research does not reveal, any cases applying the rule stated in *Paragon Sales* and *Murphy* to the non-insurance context. In a case of first impression under Texas law, the majority decides to extend this rule to the non-insurance context. Though the major-

---

4. Therefore, the *Paragon Sales* case is not on point and is not contrary to the *Crawford* case from this court, discussed above. *See Crawford*, 630 S.W.2d at 379–80.

5. Therefore, the *Murphy* case is not on point and is not contrary to the *Crawford* case from this court, discussed above. *See Crawford*, 630 S.W.2d at 379–80.

6. The majority concludes that, under *Blue*, the City Parties did not need to prove the

entire Agreement or provide the trial court with all of the terms of the Agreement. *See ante* at pp. 229–30. However, there was no issue in *Blue* as to whether a party can obtain relief based on a contract without providing the court with all of the contract terms; therefore, *Blue* is not on point or contrary to *Crawford*. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555–56 (Tex.2000).

ity concludes that there is no reason why the non-insurance context should be any different from the insurance context, material differences between these contexts provide strong support for not extending this rule to the non-insurance context.

Generally, courts construe insurance policies according to the same rules of construction that apply to contracts. *See Don's Building Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex.2008); *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex.1993). But, for reasons peculiar to the cases involving insurance policies, there are exceptions to this general rule; for example, if an insurance contract is ambiguous, courts must resolve the ambiguity by adopting the construction favorable to the insured, rather than having the factfinder determine the parties' mutual intent, as would occur in the non-insurance context. *See Don's Building Supply, Inc.,* 267 S.W.3d at 23 (stating that, in insurance context, ambiguous terms are construed in favor of the insured rather than having a trial regarding the parties' intent); *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996) (stating, in non-insurance context, that if a contract's meaning is ambiguous, then the finder of fact must determine the meaning of the ambiguous provision based on the mutual intent of the parties). This is a material difference between contract interpretation principles governing the insurance context and those governing the non-insurance context.

As a practical matter, insureds generally are not given a copy of the insurance policy, a fact that is mentioned in the *Paragon Sales* case, in which the high court discussed with approval a case stating that the nature of a suit between the insured and insurer puts the insurer, who holds the insurance policies, on notice to produce them. *See Paragon Sales Co.,*

774 S.W.2d at 661. Therefore, the *Paragon Sales* rule can be justified as protecting the insured, who generally does not have a copy of the insurance policy, and imposing on the insurer the burden of proving the terms of the insurance policy. However, this policy consideration does not support extending the *Paragon Sales* rule to the non-insurance context, in which courts cannot and do not presume that one party generally has a copy of the contract and the other party does not.

Absent this policy of protecting the insured, the potential problems of extending the *Paragon Sales* rule to the non-insurance context mitigate against extending the rule. Such an extension would contradict the common law requirement that courts must examine and consider the entire contract so that, as much as possible, they can harmonize and give effect to all the contract's provisions. *See Webster,* 128 S.W.3d at 229. Such an extension also would undermine the rule that courts, not parties, are responsible for construing the language of the contract at issue. *See Watkins,* 2003 WL 21786173, at *3–5; *City of Bunker Hill Village,* 809 S.W.2d at 310. In addition, extension of the *Paragon Sales* rule would create practical problems for determining the binding effect of opinions regarding contracts.

For example, the Agreement affects all Houston police officers. It would not be fair to penalize a police officer, the Houston Police Officers' Union ("Union"), or the City of Houston for the failure of the parties in this case to prove all the terms of the Agreement, some of which, as noted, might contradict the court's determination of the Agreement's meaning. Therefore, the court's decision today should not be binding on future cases in which the parties, as they almost always do, prove the entire Agreement. The only cases in which the court's opinion in this case

should be binding are those in which the parties prove precisely the same parts of the Agreement. *But how will future courts and parties establish which parts of the Agreement were before this court?* The majority does not specify the portions of the Agreement that it has considered.[7] In the absence of such a statement, the court's opinion today can have no future precedential value regarding the construction and application of the Agreement. If the parties were required to prove all the terms of the Agreement, then, under ordinary common law principles, this court's opinion would be binding in all future cases in this court with the same or sufficiently similar facts and issues involving the Agreement.

Finally, there is no need to extend the *Paragon Sales* rule to the non-insurance context. There appears to be no case in Texas jurisprudence in which the parties in a non-insurance context were unable to prove all the terms of their contract. There is no reason why the City Parties could not prove the entire Agreement if the court were to reverse and remand.[8]

For the reasons stated above, even if this court were not bound by *Crawford*, it still should not extend the *Paragon Sales* rule to the non-insurance context. By doing so, the court creates an unnecessary risk of inconsistent holdings, undermines traditional rules of contract analysis, and introduces uncertainty into a well-settled area of Texas law.

7. Even if courts specified the parts of the contract that they had before them, this specification could become unwieldy, and it still would not solve the problem that the case would have limited precedential value.

8. This case does not present a situation in which the parties, despite reasonable efforts, are unable to prove all of the terms of a contract. A situation in which the parties are unable to prove all of the contract terms ap-

**Wheeler has not judicially admitted that the prerequisites of section 143.361 have been satisfied.**

The majority correctly notes that, even if Wheeler lacked third-party beneficiary status under the Agreement, this would not be a jurisdictional defect, and therefore it could not support the trial court's dismissal for lack of jurisdiction. *See ante* at p. 229; *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Thus, for the majority's analysis to be correct, the Agreement not only must be enforceable, it also must have the force of a statute under section 143.361 of the Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 143.361 (Vernon 2008). However, for section 143.361[9] to apply to the Agreement, all of the following prerequisites (collectively hereinafter the "Prerequisites") must be established:

· The Union must satisfy all the requirements for qualifying as "bargaining agent" under section 143.352(1).

· The Agreement must have been made under Chapter 143, Subchapter J of the Texas Local Government Code.

· The Agreement must have been ratified by a majority vote of the City of Houston's governing body.

· The Agreement must have been ratified by a majority vote in an election called by the Union and held under section 143.360.

pears to be a rare one, given the dearth of cases dealing with it. However, if this situation arises, it could be addressed, and there is no need to base the general rule in the non-insurance context on such an unusual case.

9. Unless otherwise specified, all statutory references in this opinion are to the Texas Local Government Code.

*See* Tex. Loc. Gov't Code Ann. §§ 143.352, 143.359–143.361 (Vernon 2008). The City Parties did not prove that the Prerequisites were satisfied, and the majority does not conclude otherwise. Nonetheless, the majority bases its analysis on an alleged judicial admission by Wheeler in her petition that the Prerequisites have been satisfied.

Because no special exceptions were sustained as to Wheeler's petition, this court is to construe that petition liberally and in Wheeler's favor. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex.2000). "A judicial admission must be a clear, deliberate, and unequivocal statement." *Id.* at 905. In her petition, Wheeler alleges that the Union acts as the bargaining agent on behalf of all Houston Police Officers. This statement might provide a sufficient basis for concluding that proof regarding the first prerequisite above has been made unnecessary by a judicial admission in Wheeler's petition. However, there is no basis for concluding that Wheeler has judicially admitted any of the other Prerequisites. In her petition, Wheeler never mentions any part of the Texas Local Government Code, and she does not assert that the Agreement was made under any part of that statute. Wheeler does not assert that the Agreement was ratified by the City of Houston's governing body or by the Union. Wheeler does not allege that the Agreement is enforceable under section 143.359 or under any other statute. Under the applicable legal standard, Wheeler has not clearly, deliberately, and unequivocally stated that the last three Prerequisites have been satisfied. *See Rente Co. v. Truckers Exp., Inc.,* 116 S.W.3d 326, 333 (Tex.App.-Houston [14th Dist.] 2003, no pet.). The majority concludes to the contrary based on the following chain of reasoning:

· Wheeler seeks to enforce the Agreement.

· Therefore, she premises her claims on the enforceability of the Agreement.

· If the Prerequisites are satisfied, then under section 143.359, the Agreement is enforceable.

· Therefore, Wheeler has judicially admitted that the Agreement is enforceable and that the Prerequisites have been satisfied.

*See ante* at pp. 228–29.

Wheeler does assert that the Agreement is enforceable; however, she does not assert that the Agreement is enforceable under the Texas Local Government Code or because the Prerequisites have been satisfied. If the Prerequisites are satisfied, then under section 143.359, "[a] written agreement *made under this subchapter* between a public employer and a bargaining agent is enforceable." Tex. Loc. Gov't Code Ann. § 143.359 (Vernon 2008) (emphasis added). This statute does not state that the Prerequisites must be satisfied before any agreement can bind a public employer, and it does not state that an agreement must be made under Chapter 143 for an agreement to bind a public employer. Under the language of the statutes in question, if Chapter 143's provisions are satisfied, this statute provides one way for an agreement to be made that is binding on a public employer. However, the statute does not state that it is the only way for such an agreement to be made. In addition, even if it were the law that the Agreement must satisfy Chapter 143 to be enforceable, Wheeler is free to make a good faith argument that the law should be modified to allow the Agreement to be enforced even though it does not satisfy the Prerequisites. In the judicial-admission analysis, this court must focus on Wheeler's pleading to see if it contains a clear, deliberate, and unequivocal

statement that the Prerequisites have been satisfied. In its analysis, the majority effectively implies into Wheeler's petition an allegation that the Agreement is enforceable under Chapter 143 or that the only way the Agreement can be enforceable is under Chapter 143. These allegations are not in the petition, and this court must construe that petition liberally in Wheeler's favor. *See Auld,* 34 S.W.3d at 897.

The evidence before the trial court does not support a finding that the Prerequisites are satisfied, and the record contains no stipulation or judicial admission by Wheeler to this effect. Because the record contains no evidence, stipulation, or admission that the Prerequisites were satisfied, the trial court erred to the extent it granted the City Parties' plea to the jurisdiction based on their argument that section 143.361 applies to the Agreement.

**The City Parties' argument regarding appeals from administrative orders lacks merit.**

In their plea to the jurisdiction, the City Parties also invoked a line of cases holding that, absent statutory authorization, district courts have no jurisdiction to hear an appeal from an administrative order, unless the order violates a constitutional provision. *See City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788, 790 (1951). This argument fails as a matter of law because Wheeler is not challenging any administrative order in this lawsuit. In addition, the City Parties did not prove any applicable statutory regime, so there is no way to determine on this record whether Wheeler has a right to bring this suit under any applicable statutory regime.

**The City Parties' standing argument lacks merit.**

In their plea to the jurisdiction, the City Parties asserted that Wheeler has no standing to file this suit based on article 5 of the Agreement. However, to the extent this standing argument is dependent upon the Agreement's preemption of other statutes under section 143.361, as discussed above, there is no evidence that the Prerequisites are satisfied so that the Agreement has the force of a statute. To the extent the City Parties were making a standing argument based on Wheeler's alleged status as third-party beneficiary under the Agreement and regardless of any statute, that argument, even if successful, would go to the merits and would not provide a basis for affirming the trial court's dismissal for lack of jurisdiction. *See Yasuda Fire & Marine Ins. Co. of Am.,* 225 S.W.3d at 898 (holding that lack of rights as a party or third-party beneficiary under a contract goes to the merits and does not deprive the court of jurisdiction). In addition, this court cannot determine whether Wheeler is a third-party beneficiary under the Agreement because the entire Agreement has not been provided. *See J.M. Davidson, Inc.,* 128 S.W.3d at 229; *MCI Telecomm. Corp.,* 995 S.W.2d at 650–52; *Ross,* 296 S.W.3d at 219; *Crawford,* 630 S.W.2d at 379–80.

**Conclusion**

The arguments raised by the City Parties do not entitle them to a dismissal for lack of jurisdiction. This court should sustain Wheeler's two issues, reverse the trial court's judgment, and remand the case to the trial court. Were this court to do so, on remand, the City Parties could have the opportunity to (1) offer proof that the Prerequisites have been satisfied so that section 143.361 applies and (2) provide the trial court with a complete copy of the Agreement. Instead, the court breaks new ground today by holding that a party in a non-insurance context can obtain favorable relief in court based on a contract

without providing the entire contract to the court. This holding is contrary to prior precedent from this court requiring that such a party provide the entire contract. This holding is also contrary to precedent from the Supreme Court of Texas and this court sitting en banc requiring that this court examine and consider all of the Agreement's provisions. The *Paragon Sales* and *Murphy* cases are limited to the insurance context and do not apply in this case. Any extensions of the rule stated in these cases should be left to the Supreme Court of Texas.