

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00006-CV

THE CITY OF LUBBOCK, TEXAS, APPELLANT

V.

COYOTE LAKE RANCH, LLC, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 9245, Honorable Gordon Houston Green, Presiding

July 10, 2014

OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

On motion by Coyote Lake Ranch, the Court, sitting *en banc*, has withdrawn the memorandum opinion issued on June 17, 2014, designated said memorandum opinion as an "opinion," and re-issues said opinion without further change. *See* TEX. R. APP. P. 47.6.

The City of Lubbock, Texas, (the City) brings this accelerated interlocutory appeal from the trial court's order granting a temporary injunction in favor of Coyote

Lake Ranch, LLC (CLR).[1]  The trial court's order prohibits the City from undertaking certain activities relating to further development of its proposed water well plan on land the remaining surface estate of which CLR owns and uses.  On appeal, the City maintains that the legal basis underlying the trial court's temporary injunction is erroneously applied to this groundwater estate context.  We agree and will dissolve the temporary injunction.

Factual and Procedural History

In 1953, the Purtell family conveyed to the City of Lubbock the groundwater rights associated with the land at issue.  In pertinent part, the 1953 Deed conveyed to the City as follows:

> [A]nd by these presents do Grant, Sell and Convey unto the said CITY OF LUBBOCK, a municipal corporation of Lubbock County, Texas, all of the percolating and underground water in, under, and that may be produced from the hereinafter described tracts of land, situated in Bailey County, Texas, together with the exclusive right to take such water from said tracts of land and to use the same for disposition to cities and towns situated in Bailey, Cochran, Hockley, Lamb and Lubbock Counties, Texas, together with the full and exclusive rights of ingress and egress in, over, and on said lands, so that the Grantee of said water rights may at any time and location drill water wells and test wells on said lands for the purpose of investigating, exploring[,] producing, and getting access to percolating and underground water; together with the rights to string, lay, construct, and maintain water and fuel pipelines and trunk, collector, and distribution water lines, power lines, communication lines, air vents with barricades, observation wells with barricades, if required, not exceeding ten (10) square feet of surface area, reservoirs, booster stations, houses for employees, and access roads on, over and under said lands necessary or incidental to any of said operations, together with the right to erect necessary housing for wells, equipment and supplies, together with perpetual easements for all such purposes, together with the rights to use all that part of said lands necessary or incidental to the taking of percolating and underground water and the production, treating and

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2013).

transmission of water therefrom and delivery of said water to the water system of the City of Lubbock only.

When, in 2012 and 2013, the City proposed a well field plan and began testing and development in furtherance of that plan, CLR sued the City, alleging a variety of causes of action. In November 2013, CLR obtained a temporary restraining order and, later, applied for a temporary injunction by which it sought to enjoin the City from taking certain actions in furtherance of that proposed well plan. On December 23, 2013, the trial court signed its order granting CLR's application for temporary injunction pending trial on the merits. In its order, the trial court concluded as follows:

> On considering the evidence received and the arguments of counsel, the Court finds and concludes that [CLR] will probably prevail on the trial of this cause; that pursuit of [the City]'s well field plan has caused damage to [CLR], and further damage to [CLR] will occur absent the use of reasonable means to ameliorate that damage; that [the City]'s proposed well field plan is likely accomplished through reasonable alternative means that do not unreasonably interfere with [CLR]'s current uses; and that [CLR] has suffered harm caused by [the City]'s activities and will likely suffer irreparable harm in the future.

> The Court also finds and concludes that if [the City] carries out their intentions regarding the well field project, it will thereby alter the status quo and tend to make ineffectual a judgment in favor of [CLR] in that [CLR] will suffer harm and will probably be irreparably damaged thereby. Unless the [City] is deterred and prevented from carrying out its intentions, [CLR] will be without adequate remedy at law because monetary relief would be inadequate to make [CLR] whole.

> IT IS, THEREFORE, ORDERED that [the City], its officers, agents, servants, employees, attorneys, and those persons who are in active concert or participation with it who receive actual notice of this temporary injunction by personal service or otherwise are hereby enjoined and prohibited from taking any of the following actions during the pendency of this cause.

> a. Mowing, blading, or otherwise destroying the growing grass on the surface of [CLR land];

3

b. Proceeding with any test hole drilling or water well drilling without consulting [CLR] regarding potential impacts to the surface of [CLR land];

c. Erecting power lines to proposed well fields on [CLR land].

The trial court went on to set the cause for trial on November 12, 2014.

The City perfected its accelerated interlocutory appeal from the trial court's order and, on appeal, contends that the trial court abused its discretion by granting a temporary injunction in favor of CLR when CLR's claims against the City rely on the misapplication of the accommodation doctrine to the instant case. We will sustain the City's point of error.

## Applicable Law and Standard of Review

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g). To be entitled to a temporary injunction, the applicant for such must plead and prove the following three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* The Texas Rules of Civil Procedure require that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." *See* TEX. R. CIV. P. 683.

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. A reviewing court should reverse an order

4

granting injunctive relief only if the trial court abused that discretion. *Id.*; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204 (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985) (orig. proceeding), and *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978)). A trial court abuses its discretion when it misinterprets or misapplies the law. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts."); *see also In re M.N.G.*, 147 S.W.3d 521, 530 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g). More specifically, a trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts or when the record fails to reasonably support the conclusion that the applicant has a probable right of recovery. *See State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975) ("recogniz[ing] the risk of injustice in the immobilization of a defendant from a course of conduct he may have the legal right to pursue"); *see also ICON Benefit Adm'rs II, L.P. v. Abbott*, 409 S.W.3d 897, 902 (Tex. App.—Austin 2013, pet. denied).

We review the evidence in the light most favorable to the order and indulge all reasonable inferences in favor of the decision. *See City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex. App.—Corpus Christi 2007, pet. denied). In an appeal such as this, from an order granting or denying a temporary injunction, our scope of review is restricted to the validity of the order granting or denying relief. *See Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.,* 281 S.W.3d 215, 220 (Tex. App.—Fort

Worth 2009, pet. denied). It is not this Court's duty to review the merits of the underlying case. *See Davis*, 571 S.W.2d at 861. When findings of fact are not requested or separately filed, a reviewing court must uphold the trial court's order on any legal theory supported by the record. *See id.* at 862; *Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 309 (Tex. App.—Fort Worth 2003, no pet.).

Analysis

Identifying Issues on Appeal

We acknowledge that CLR alleged four causes of action against the City in its First Amended Petition: inverse condemnation, breach of contract, negligence, and declaratory judgment. The City contends and CLR seems to agree somewhat that the sole principle underlying any or all of CLR's causes of action was the application of the accommodation doctrine. As is readily apparent, the trial court's order is silent as to other causes of action alleged by CLR and focuses exclusively on the concepts associated with the accommodation doctrine. And the parties seem to agree generally that the applicability of the accommodation doctrine is the sole issue before us.

Additionally, there is no other way through any other of CLR's alleged causes of action that the trial court could have arrived at its conclusions and enjoined the City's development activities as it did. In other words, the trial court could only arrive at its conclusion—that the City's "proposed well field plan is likely accomplished through reasonable alternative means that do not unreasonably interfere with [CLR]'s current uses"—if it were to have found first that the City owed to CLR a duty to exercise the City's rights to the groundwater with due regard to the current surface uses. And it

6

follows from there that the only way by which the trial court could have found that the City owed to CLR such a duty was by way of the accommodation doctrine. Simply put, the record does not support any other legal theory upon which the trial court's order could be upheld. *See Davis*, 571 S.W.2d at 862. We, therefore, restrict our review to the issue concerning the applicability of the accommodation doctrine. Again, it is not our duty, when reviewing the trial court's order granting a temporary injunction, to review the merits of the case in its entirety. *See id.* at 861.

The Accommodation Doctrine Generally

The trial court's order reveals that its issuance is dependent on CLR being able to maintain a cause of action against the City that would rely on application of the accommodation doctrine. The accommodation doctrine is based on the concept of the due regard with which the dominant mineral estate owner must exercise his rights to use the surface as those rights relate to the servient surface estate owner's rights. The doctrine, also referred to as the "alternative means" doctrine, was first fully articulated in *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 621 (Tex. 1971), as a way to balance the rights of the surface owner and the mineral estate owner in regard to the use of the surface of the land. The Texas Supreme Court explained the relationship:

> [W]here there is an existing use by the surface owner which would otherwise be precluded or impaired, and where under established practices in the industry there are alternatives available to the lessee whereby minerals can be recovered, the rules of reasonable usage of the surface may require the adoption of an alternative by the lessee.

*Getty*, 470 S.W.2d at 622. The Texas Supreme Court has recently reiterated "the principle underlying the accommodation doctrine" as "balancing the rights of surface

7

and mineral owners to use their respective estates while recognizing and respecting the dominant nature of the mineral estate." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 250 (Tex. 2013)

The burden of proving that the use of the surface by the mineral estate owner is not a reasonably necessary use lies with the surface estate owner. *See id.* at 249. The surface estate owner may discharge his burden by demonstrating that the mineral estate owner's use of the surface is not reasonably necessary because there are available non-interfering and reasonable ways and means of producing the minerals which would permit the surface estate owner to continue his existing use of the surface. *See Tarrant Cnty. Water Control & Improvement Dist. No. One v. Haupt, Inc.*, 854 S.W.2d 909, 911 (Tex. 1993).

The Parties' Positions on the Accommodation Doctrine's Application

The accommodation doctrine is a well-established concept in the context of respective rights of mineral estate and surface estate owners. The question presented to us here is whether the doctrine also applies to the relationship between the groundwater estate owner and the remaining surface estate owner.

The City contends that, here, the express terms of the 1953 Deed should govern the relationship between CLR and the City with respect to the City's use of the surface as it exercises its right to access the groundwater. The City urges that the accommodation doctrine does not apply to the groundwater context wherein, unlike the mineral estate and surface estate relationship, neither the remaining surface estate nor

8

the severed groundwater estate enjoys the status as the dominant estate.[2]  According to the City, the absence of a dominant estate in this context means that the owner of the groundwater estate has no implied right to use the surface estate, with "due regard" or otherwise.  *See generally Sun Oil Co. v. Whitaker*, 483 S.W.2d 808, 811 (Tex. 1972) (per curiam) (op. on reh'g) (discussing nature and extent of rights "implied by law in all conveyances of the mineral estate").

That said, contends the City, there lacks a basis for application of the accommodation doctrine, which was designed specifically to balance the rights of the dominant mineral estate owner and the servient surface estate owner with respect to use of the surface.  *See Merriman*, 407 S.W.3d at 250.  The City maintains that because the accommodation doctrine does not apply in this case, CLR cannot prevail on any of the above-listed established criteria for showing entitlement to a temporary injunction.  *See Butnaru*, 84 S.W.3d at 204.  For that reason, the trial court improperly granted the temporary injunction in favor of CLR.  The City acknowledges that CLR alleged four causes of action against the City but maintains that CLR's argument in favor of the temporary injunction and the trial court's order granting one are restricted to the application of the accommodation doctrine in this case.

Indeed, CLR sees the issue as similarly restricted: "The issue to be resolved here is whether this well-established doctrine applies to the relationship between a surface owner and the owner of a severed groundwater estate."  In its brief, CLR proposes its

---

[2] Alternatively, the City contends, the express, specific provisions in the 1953 Deed would prevail over general accommodation doctrine principles.  The City points out that the trial court did not find that the City's proposed well field plan is or would be beyond the City's *contractual* rights to explore and produce the groundwater as set forth in the 1953 Deed.  The City cites *Landreth v. Melendez*, 948 S.W.2d 76, 81 (Tex. App.—Amarillo 1997, no pet.) (op. on reh'g).

answer in the affirmative, drawing an analogy between the groundwater estate and the mineral estate: "The owner of a subsurface estate in groundwater owes the 'due regard' to the surface owner that an oil and gas lessee owes [the] surface owner."  To support its affirmative answer, CLR advances what it sees as a logical extension of fairly recent Texas Supreme Court authority: that the severed groundwater estate is treated much like a severed mineral estate.  And, much like the owner of a mineral estate, the City, as owner of the severed groundwater estate, must exercise its rights to explore and produce the groundwater with due regard to the rights of the surface estate owner and the current uses of the surface.

Holdings in *Day*, Invitation to Extend Those Holdings

Our research has yielded no case in which a Texas court has applied the accommodation doctrine to the groundwater context, and CLR has cited us to none that have.  Instead, to support its contention that the doctrine *should* apply in this context, CLR relies rather heavily on language from the Texas Supreme Court's opinion in *Day,* in which the court draws an analogy between certain aspects of ownership of groundwater and ownership of oil and gas.  *See Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 831–32 (Tex. 2012).  Anchored on *Day*'s analogy, CLR goes further to urge that the accommodation doctrine should govern the relationship between owners of the severed groundwater estate and the surface estate in much the same way that it governs the relationship between the mineral estate owner and the surface estate owner.  Based on our reading of *Day*, we cannot take the analogy quite so far based solely on the analogy drawn and the reasoning applied in *Day*.

10

In *Day*, the Texas Supreme Court discussed at length the rule of capture as it has developed over the years in Texas and how the rule of capture applies to and impacts groundwater ownership. *See id.* at 823–830. *Day* also discussed the ownership of groundwater in place, drawing an analogy between ownership of groundwater in place to the ownership of oil and gas in place:

> In our state the landowner is regarded as having absolute title in severalty to the oil and gas in place beneath his land. The only qualification of that rule of ownership is that it must be considered in connection with the law of capture and is subject to police regulations. The oil and gas beneath the soil are considered a part of the realty. Each owner of land owns separately, distinctly and exclusively all the oil and gas under his land and is accorded the usual remedies against trespassers who appropriate the minerals or destroy their market value.

*Id.* at 831–32 (quoting *Elliff v. Texon Drilling Co.*, 146 Tex. 575, 210 S.W.2d 558, 561 (1948)). Immediately thereafter, the *Day* court expressly adopted this position with respect to ownership of groundwater in place: "We now hold that this correctly states the common law regarding the ownership of groundwater in place." *Id.* at 832.

The relationships at issue in *Day* are obviously distinguishable from those presented in the instant case. The landowners—ultimately owners of both the surface and groundwater estates, the Edwards Aquifer Authority, and the State of Texas were involved in *Day*, and the issue presented in that case was "whether land ownership includes an interest in groundwater in place that cannot be taken for public use without adequate compensation guaranteed by article I, section 17(a) of the Texas Constitution." *See id.* at 817–18, 821. Ultimately, *Day* "decided that landowners do have a constitutionally compensable interest in groundwater." *Id.* at 838. It is in support of this conclusion that the *Day* court determined that ownership of groundwater in place

11

is similar to the ownership of oil and gas in place, with certain similar considerations and certain similar rights associated with ownership of both. *See id.* at 831–32 (relying on *Eliff*, 210 S.W.2d at 561).

Nowhere in *Day*, however, does the court speak to the implied rights of a severed groundwater estate owner to use the surface in production of groundwater. Nor does it define and delineate the rights and duties as between owners of the severed groundwater estate and the surface estate. The dynamics and the rights between the parties before us are different than the rights of the parties addressed in *Day*. And simply because a landowner may own the groundwater beneath his land in a manner similar to the way in which a landowner owns oil and gas beneath his land does not necessarily translate into the analogy being taken further, all the way into governing the rights and defining the relationships between landowners and other entities. Indeed, *Day* itself seems to recognize a limitation to the analogy it draws between ownership of oil and gas and ownership of groundwater, observing that, despite some similarities regarding ownership of oil and gas and ownership of groundwater, "[i]t is true, of course, that the considerations shaping the regulatory schemes differ markedly." *Id.* at 831 (discussing similarities and differences regarding ownership of each substance); *see generally Sun Oil*, 483 S.W.2d at 816–18 (Daniel, J., dissenting) (presenting a comprehensive history and discussion of dominant and servient estate designations in Texas law with respect to mineral and surface estates).

We do not read *Day* to support an extension of the accommodation doctrine to the groundwater context presented in the instant case. If *Day* is to be read to support such an extension of its analogy between groundwater and oil and gas, then this Court

respectfully defers to the Texas Supreme Court to recognize and pronounce such an extension, especially in light of the dramatic implications it could have in the area of water law in Texas. Generally, changes in the law should be left to the Texas Supreme Court or the Texas Legislature. *See Campus Mgmt., Inc. v. Kimball*, 991 S.W.2d 948, 952 (Tex. App.—Fort Worth 1999, pet. denied); *Amador v. Tan*, 855 S.W.2d 131, 134 (Tex. App.—El Paso 1993, writ denied); *Hicks v. Baylor Univ. Med. Ctr.*, 789 S.W.2d 299, 304 (Tex. App.—Dallas 1990, writ denied). More specifically, we leave any extension of the rule expressed in *Day* to the Texas Supreme Court. *See Wheeler v. White*, 314 S.W.3d 225, 242 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (Frost, J., dissenting).

## Conclusion

Finding no authority to support CLR's position that the accommodation doctrine should apply to the relationship between the owners of the severed groundwater estate and the surface estate in such a way as to alter the manner in which the groundwater estate owner may use the surface, we conclude that CLR failed to allege a viable cause of action against the City and similarly failed to show a probable right to the relief sought. *See Butnaru*, 84 S.W.3d at 204. Concluding to the contrary on the apparent basis that the accommodation doctrine does apply to this context and as between these parties, the trial court abused its discretion by granting the temporary injunction in favor of CLR. We sustain the City's issue on appeal from the trial court's order granting the temporary injunction.

Accordingly, we reverse the trial court's order granting a temporary injunction in favor of CLR, dissolve the temporary injunction, and remand the case to the trial court for further proceedings consistent with this opinion.


Mackey K. Hancock
Justice